69 So.2d 724

**McWATERS et al. v. GARDNER.**

**3 Div. 963.**

Court of Appeals of Alabama.

Jan. 12, 1954.

Geo. C. Brassell and Robt. E. Coburn, Jr., Montgomery, for appellee.

Chas. M. Pinkston and Richard C. Belser, Montgomery, for appellants.

CARR, Presiding Judge.

The counts in the complaint are in code forms for trespass, detinue and conversion.

The trial of the cause resulted in a verdict in favor of the plaintiff, assessing his damages at $500.

Under the undisputed factual issues it is evincingly clear that the verdict was in response to the count in trespass, and this on the theory that the taking of the personal property in question was not in a peaceable manner.

The evidence in the case is without material conflict. The appellant sold an automobile to one James Jackson on a conditional sales contract. While the contract was in default Grimes Motor Company came into possession of the car by purchase and subsequently sold it to the appellee for a cash consideration.

The indicated conditional sales contract contains this provision: "Customer agrees in any such case to pay said amount or, at holder's election, to deliver the car to the holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract and shall receive any surplus."

At the time of the repossession by the appellant, the conditional sales contract was in default.

The appellee was employed by Dan Armstrong Plumbing Company in the city of Montgomery, Alabama. On the day of instant concern he parked the automobile in question on a public street about one-half block from his employer's place of business.

The appellant observed the car and recognized it as the one previously sold to Jackson. He was informed by Mr. Armstrong that the car belonged to appellee and that the owner was out on a job and was expected back within a short time.

Here we quote from Mr. Armstrong's testimony:

"A. Mr. Stucky came up to me and asked whose automobile it was, and I didn't know at that time whether it belonged to one of my boys, and somebody around the place told me whose car it was. Mr. Stucky came in to my office, called his place of business, and told me he had been doing this for thirty years, he could pick it up. I asked him three times not to take the boy's car, but he took it anyway.

"Q. State his attitude, whether he was rude, uncooperative, or pleasant and congenial about the whole thing? A. I wouldn't say the man was uncooperative or rude about it. I don't know what to say about it. I didn't like it much because he was in my place and taking one of my employee's cars. I don't know. I cannot say too much about the man's attitude.

"Q. Were you present at the time he took the car off? A. Yes.

"Q. Where were you? A. I was standing on the porch of my place of business.

"Q. Did you go out and raise any objection? A. I didn't think I had any right to raise any objection besides stating what I did, and I didn't own the car.

"Q. Did any of the other employees raise any question? A. No one was there but myself and secretary."

Mrs. Jane Arnold, the secretary, gave this account: "He came in and asked if we knew who owned the black automobile that was parked in front of the shop, and I got up to see which car he was talking about, and I told him it belonged to Robert Gardner, and he said the car was belonging to him, or the company he worked for, and that they had a mortgage on it or something, and he had come to pick it up. Well, Mr. Armstrong had me call Robert's wife and

ask her if he had a bill of sale for the car, and I talked to her and she said that he was supposed to receive it that day. So I called Grimes Motor Company and talked to a salesman down there, and they said the bill of sale was in the mail at that time and that he would probably get it that day. Mr. Stucky said that he was going to go on and take the car, and Mr. Armstrong told him he didn't think he should, that Robert would be in any minute; that if he could talk to him about it he thought it could be straightened out. Mr. Stucky said he was going to take the car. And he called in, I believe, to his office and told them he had located the car they were searching for, and had been for some time, I believe. And he started out to get the car, and Mr. Armstrong told him again he didn't think he should take the car, that Robert would be in any minute and he could talk to him. And Mr. Stucky said it was his car and he was going to take it, and if Robert wanted to know anything about it he could call down at Colonial Motors. And Robert came in about five or ten minutes after Mr. Stucky left, and Mr. Armstrong and I both told him what had happened, and then they called Mr. Brassell."

This we think presents a fair and accurate account of the salient circumstances incident to the repossession of the property by the appellant.

Trespass is the unlawful or wrongful interference with the possession of another, the gist of the action being the disturbance of the possession. Pollard v. Pollard, 207 Ala. 270, 92 So. 488.

The law is well settled that the owner of personal property may recapture and take it into his possession whenever or wherever found, but in taking possession of his own property he must commit no trespass, violence, force or breach of the peace. In other words, unlawful force forms the essential element of trespass. Singer Sewing Machine Co. v. Hayes, 22 Ala.App. 250, 114 So. 420; Stowers Furniture Co. v. Brake, 158 Ala. 639, 48 So. 89; Folmar & Sons v. Copeland & Brantley, 57 Ala. 588; McGill v. Holman, 208 Ala. 9, 93 So. 848, 31 A.L.R. 941.

In this connection it should be noted that force may be either express or implied. That is to say that the term "force" as applied to a trespass to personal property does not necessarily mean actual physical force, but it may be constructive force. Crews & Green v. Parker, 192 Ala. 383, 68 So. 287; American Discount Co. v. Wyckroff, 29 Ala.App. 82, 191 So. 790.

In the case at bar the appellant took possession of the property without the knowledge or consent of the appellee. This fact alone was not the equivalent of taking by constructive force. Street v. Sinclair, 71 Ala. 110; Burns v. Campbell, 71 Ala. 271.

It is not contended that Mr. Armstrong or Mrs. Arnold had the possession of the car or that either of these persons was in any manner acting as the agent of the appellee in the matter.

According to the appellee's position Mr. Armstrong did tell Mr. Stucky "three times not to take the boy's car."

When all the circumstances are taken into account, this could only be interpreted as an admonition or suggestion rather than a specific order or command.

When the evidence is reduced to its succinct and material aspects, we have this situation: The appellee left his car parked on a public street; the appellant had the legal right to repossess the property; without the knowledge or consent of the appellee the former, without either actual or constructive force, possessed the car and conveyed it to its place of business.

This evidence, in our view, is not sufficient to sustain the trespass count.

We will not laden this opinion with a discussion of many authorities we have carefully examined in out of state jurisdictions. These cases may be found cited and annotated in 9 A.L.R., pages 1180–1184; 55 A.L.R., pages 184–186; 36 A.L.R., pages 853–854; 57 A.L.R., pages 26–30; 105 A.L.R., pages 926–932.

The defendant did not request the general affirmative charge. The question for

422

our review is presented by the motion for a new trial on the stated ground that the verdict of the jury is contrary to the great weight of the evidence.

For error in overruling the motion, the judgment of the lower court is ordered reversed and the cause is remanded.

Reversed and remanded.