323 So.2d 360

**W. J. SPEIGLE**

v.

**CHRYSLER CREDIT CORPORATION,**
a corporation, et al.

**Civ. 617.**

Court of Civil Appeals of Alabama.

Sept. 24, 1975.

Rehearing Denied Oct. 22, 1975.

John Martin Galese, Birmingham, for appellant.

William B. Hairston, Jr., Birmingham, for appellees.

**472**

BRADLEY, Judge.

This case involves the repossession of an automobile under the provisions of Uniform Commercial Code, Section 9–503. Plaintiff-appellant entered into a contract with defendant-appellee Chrysler Credit Corporation to finance the purchase of a new 1973 Dodge Dart. Plaintiff fell behind in his payments, and on October 10, 1974, defendants Terry Savage and Ricky Norris repossessed the car on behalf of their employer, Chrysler Credit Corporation.

Plaintiff filed suit in the Circuit Court of Jefferson County, alleging that the repossession amounted to conversion and demanding money damages and return of the vehicle. The complaint sought declaratory judgments holding that plaintiff was not in default on the contract and that defendants' conduct was inequitable and in breach of the peace. Additionally, plaintiff sought to have the repossession declared a deprivation of plaintiff's property without due process of law and asked the court to declare such practices under Title 7A (Uniform Commercial Code), Section 9–503, Code of Alabama 1940, as Recompiled 1958, in violation of the fifth and fourteenth amendments to the United States Constitution. The defendants answered by denying the allegations of the complaint. Trial was had before the court sitting without a jury. A judgment was rendered for defendants.

The trial court found that plaintiff had breached the contract and that defendants were entitled to take possession of the vehicle; that there was no breach of the peace or trespass committed by defendants in the repossession of the vehicle; that there was no conversion of the vehicle by defendants inasmuch as defendants had legal title and right to possession at the time the vehicle was repossessed, nor was there unlawful detention of the vehicle for the same reason; and that plaintiff was not entitled to declaratory relief for the reason that the acts and practices of defendants in taking possession of the 1973 Dodge Dart did not deprive plaintiff of any due process rights under the State and Federal Constitutions and that self-help repossession of personal property pursuant to Title 7A, Section 9–503 is constitutional. The appeal is from that judgment.

The plaintiff's first contention in his assignments of error is that the trial court erred in finding that at the time of the repossession of the vehicle, he was in default on his contract.

It is undisputed that plaintiff entered into an agreement with Chrysler Credit in 1973 whereby he agreed to pay for the Dodge Dart in thirty-six payments of $125.12 each, beginning on July 14, 1973 and due each month thereafter until paid for. The contract provided that if plaintiff failed to make the payments as agreed, the holder of the contract could, at its option, declare the balance remaining immediately due and repossess the automobile. The contract also provided that a waiver of any default would not be deemed as a waiver of any other default. Plaintiff failed to make his September 14, 1974 payment when it came due. Defendant Norris talked to plaintiff by telephone on October 9, 1974, and reminded him that his September 14, 1974 payment was delinquent, and asked when he was going to take care of it. Plaintiff replied that he was out of work and did not know when he would be able to make further payments. Plaintiff testified that he was then told that upon payment of a $15.00 fee, the delinquent September payment would be extended for thirty days. Norris, however, testified that he told plaintiff to pay both the September installment and an additional $15.00 in order that the October 14th payment, which was due in three or four days, could be extended.

The next day plaintiff went to defendants' office and offered to pay $15.00 but not the September 14 payment. He was told at that time by Norris that the car was being repossessed for failure to make the September 14 payment.

After a careful review of the record in this case, we are convinced that the evidence amply supports the court's finding that the plaintiff, having breached his contract with Chrysler Credit by failure to make the payments as agreed therein, was in default, and no error infected such finding.

▪ Plaintiff next contends that the trial court erred in holding that no breach of the peace accompanied the repossession of the automobile. We said in *Ford Motor Credit Co. v. Ditton*, 52 Ala.App. 555, 295 So.2d 408, cert. den., 292 Ala. 423, 295 So. 2d 412, that:

" . . . It has long been the law in this state that the title holder under a conditional sales contract, who becomes entitled to repossess for conditions of the contract broken, may take possession of the property, provided he does not in doing so use force or threats of violence against the person having possession or control or does not breach the peace. *Street v. Sinclair*, 71 Ala. 110; *Stowers Furniture Co. v. Brake*, 158 Ala. 639, 48 So. 89; *Folmar & Sons v. Copeland & Brantley*, 57 Ala. 588; *McGill v. Holman*, 208 Ala. 9, 93 So. 848; *Singer Sewing Machine Co. v. Hayes*, 22 Ala. App. 250, 114 So. 420; *Crews & Green v. Parker*, 192 Ala. 383, 68 So. 287; *American Discount Co. v. Wyckroff*, 29 Ala.App. 82, 191 So. 790; *McWaters v. Gardner*, 37 Ala.App. 418, 69 So.2d 724; *Jones v. Americar, Inc.*, 283 Ala. 638, 219 So.2d 893. Title 7A, § 9–503, Uniform Commercial Code.

"The gist of the action of trespass is an injury to the possession of personal property by use of unlawful force. Unlawful force is the essential element of the action. *Cox v. Stuart*, 229 Ala. 409, 157 So. 460; *Webb v. Dickson*, 276 Ala. 553, 165 So.2d 103. Such force may be actual physical force or it may be constructive force. Constructive force in such cases has been defined in a general way as that sort, such as threats or intimidation, to compel the submission of plaintiff against his will to the appropriation of what he asserts to be his property. *Jones v. Americar, Inc.*, supra. The threats or intimidation referred to are those which if carried out would amount to a breach of peace or if resisted would tend to promote a breach of peace. We have found no case in which such threats and intimidation did not oc-

cur in the presence of the plaintiff and at the time of the taking . . . ."

The evidence shows that plaintiff drove the car in question to defendants' office in Mountain Brook, Alabama, although there is no evidence that he was asked to do so, and sought to negotiate some solution to his contractual default. While in the office discussing the matter, he was informed by defendant Norris that he was in default on his contract and, since he could not make the delinquent payment, the car was being repossessed. As plaintiff was being told this, and while he was still in the office, defendant Savage, another employee of Chrysler Credit, went outside and parked another automobile behind plaintiff's car, blocking it in so that it could not be moved. Plaintiff went outside, unaccompanied by any of Chrysler Credit's employees, and, upon discovering this situation, went back in defendants' office and asked for an explanation. He was again told that the vehicle had been repossessed and that he would not be allowed to drive it away. Plaintiff then called his mother to come get him. As illustrated above, the record presents no evidence of any threats or rude language spoken by defendants or their agents during the repossession, and can thus be distinguished from *Crews & Green v. Parker,* 192 Ala. 383, 68 So. 287, cited by plaintiff. Furthermore, it should be noted that the repossession took place at defendants' office and not at plaintiff's home as occurred in the cited case. Since there is no evidence that any actual physical force or constructive force was exercised by defendants in carrying out the repossession of the vehicle or that a breach of the peace occurred during that time, the trial court's finding to that effect is not erroneous.

■ Plaintiff next argues that the repossession of his automobile by defendants pursuant to the provisions of Title 7A, Section 9–503, Code of Alabama 1940, as Recompiled 1958, violated the due process clause of the fourteenth amendment to the United States Constitution, and that the failure of the trial court to so hold was error.

Title 7A, Section 9–503, Code of Alabama 1940, as Recompiled 1958, provides in part as follows:

"Unless otherwise agreed a sécured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. . . ."

The text of this provision is identical with the Official Text of Section 9–503 of the Uniform Commercial Code promulgated by the National Conference of Commissioners on Uniform State Laws and now in effect in most states. In the wake of *Sniadech v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and *Fuentes v. Shevin,* 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1972), Section 9–503 of the U.C.C. has been challenged in a number of jurisdictions as a pre-judgment taking of property lacking in due process. In virtually every case the constitutionality of the provision has been upheld. *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973), cert. den., 419 U.S. 1006, 95 S.Ct. 325, 42 L.Ed.2d 282 (1974); *James v. Pinnix,* 495 F.2d 206 (5th Cir. 1974); *Brantley v. Union Bank & Trust Company,* (dec'd. jointly with *Baker v. Keeble,* same citation), 362 F.Supp. 355 (M.D.Ala., 1973), aff'd. 498 F.2d 365 (5th Cir. 1974); *Kirksey v. Theilig,* 351 F.Supp. 727 (D. Colo., 1972).

The Alabama Supreme Court, in *Rainey v. Ford Motor Credit Company,* 294 Ala. 139, 313 So.2d 179, said:

"It is well-settled that the Fourteenth Amendment is directed against state action and not private action. *Collins v. Hardyman,* 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; *New York Times Co. v. Sullivan,* 273 Ala. 656, 144 So.2d 25, re-

versed 376 U.S. 254, 84 S.Ct. 710, 11 L. Ed.2d 686, 95 A.L.R.2d 1412, motion denied, 376 U.S. 967, 84 S.Ct. 1130, 12 L. Ed.2d 83. So, in order to find a violation of due process in this case, we must first determine that §§ 9–503, 9–504 involve 'state action.'

"In *Baker v. Keeble,* 362 F.Supp. 355 (D.C.1973), affirmed, 5 Cir., 498 F.2d 365, the Federal District Court listed the situations where private conduct has traditionally been deemed 'state action':

.'' 'As a general rule, action by a non-state official fulfills the requirement of "state action" in only three circumstances: (1) Where a state official is acting in concert with a private individual; (2) where the state compels such action; and (3) *where the state law creates a power which has no common law or contractual origin. * * *'* (Emphasis Supplied).

" 'At common law no judicial proceeding was necessary to foreclose a mortgage of personal property; but the mortgagee, after a forfeiture, might seize and sell the property in satisfaction of his debt * * *.' 11 C.J., Chattel Mortgages, § 486, p. 695; *Freeman v. Freeman,* 17 N.J.Eq. 44.

"The right of a creditor to repossess and resell collateral after default, where provided for by contract, was recognized in Alabama long before the adoption of §§ 9–503, 9–504. See *Street v. Sinclair,* 71 Ala. 110; *Burns v. Campbell,* 71 Ala. 271; *Harmon v. Dothan Nat. Bank,* 186 Ala. 36, 64 So. 621; DeMoville v. Merchants & Farmers Bank, 237 Ala. 347, 186 So. 704; *Lineville National Bank v. Weaver,* 16 Ala.App. 431, 78 So. 461. Thus, we find no state action, and need not reach the constitutional due process issue."

In the present case, repossession was accomplished pursuant to the provisions in the contract authorizing this remedy in cases of default, and, as was stated in *Rai-*

*ney,* this type of creditor's self-help was recognized long before Title 7A, Section 9–503 was enacted. Thus, since no state action was involved in the repossession, no fourteenth amendment rights are violated. There was no need really for the trial court to pass on such a contention.

■ By several assignments of error plaintiff contends that it was inequitable for defendants to enforce plaintiff's default for failure to make the September 14 payment because plaintiff had been allowed to make late payments in the past.

Plaintiff says that he had made fourteen monthly payments on a thirty-six month contract and several of these payments had been made after the due date. He says that defendants, by accepting several late payments, had lulled him into believing that he could make his payments at times other than the times set out in the contract and defendants should now be estopped from claiming a contractual default. Plaintiff cites us to *Shaddix v. Bilbro,* 220 Ala. 657, 127 So. 227. In that case a lessor's course of dealing in collecting rental notes was held to have created a belief in his lessee that a delay of three days was not such a default as would be insisted upon for a forfeiture. That course of dealing consisted of a regular grant of two months' grace in payments, indefinite deferral of half of one installment, and an oral statement that some installments could be paid whenever lessee had the money. As a result, the lessor's enforcement of the forfeiture without notice and an opportunity to cure the default was held inequitable.

The facts of the case before us are less favorable to plaintiff than were the facts in the *Shaddix* case. The sales contract provided for a payment schedule of $125.12 per month for thirty-six months. It also provided that the holder of the contract upon a default in the payment schedule could, at its option, declare the entire remaining balance due and repossess the automobile. There was another provision in the contract proclaiming that a waiver of

any default should not be considered as a waiver of any other default.

Granted, the evidence shows that there had been some late payments made by plaintiff prior to the default in question. But the default now in question was almost a month old, the plaintiff was out of work, had no money, and another payment was due in three or four days. A reasonable assessment of these facts would be that plaintiff was in default on one payment, was in imminent danger of being in default of a second payment and had no reliable prospects for making any future payments. These developments certainly presented defendants with new grounds of insecurity as to the likelihood of collecting payments legitimately owed them. Defendants' declaration of default is not inequitable or unjust in such a situation; consequently, the trial court was not in error in so holding.

Plaintiff's last objection is directed to certain evidence which was admitted over his objection and, he says, prejudicially infected the court's decision.

One of the counts of the complaint sought damages for the conversion of the automobile, and at trial defendant Norris was asked to testify as to the balance of plaintiff's account at the time of the repossession. Objection was made to this question by plaintiff and the court overruled. The witness answered that to the best of his recollection the balance was $2,900. The witness was shown an account card and asked if that refreshed his recollection as to the balance due. The witness answered, "Yes, sir, Twenty-nine, sixty-four, forty five."

Three pages later in the transcript of testimony, the same witness was asked the following:

"Q. Now, Mr. Norris, you say that this balance is effective 9–30–74 and let me ask you whose handwriting is this in?

"A. That would be, it looks like Becky's handwriting.

"Q. And this isn't the original document kept by your office. I believe you testified that this was a microfilm document, this is taken from microfilm records?

"A. Yes, sir.

"Q. All right, sir. And your testimony regarding the amount shown here is not your independent recollection is it, but in fact was shown on this statement?

"A. Yes, sir.

"MR. GALESE: Well, Judge, we would move to exclude it now on the grounds that there hasn't been a proper predicate laid for the testimony. There is higher and better evidence such as the microfilm records, that this is not the best records under the Alabama Business Records Act and his testimony by his own admission is not an independent recollection. It's based on what someone else has written down here from a business record.

"THE COURT: Overrule.

"MR. GALESE: We except.

"Q. Now, I notice that this is dated 'Payoff quoted through 10–11–74'?

"A. Yes, sir.

"Q. Not September 30, '74?

"A. That is correct.

"Q. So which date is it, September 30th or October the 11th?

"A. September the 30th shows a balance on account at that particular time. The payoff was quoted on October the 11th because that is what time—that is the day that the payoff was finished.

"Q. Now, let me ask you this.

"Does this payoff that you are reflecting, I notice down here it says, 'Net balance, Twenty-five, twenty-seven, fifty-two', is that assuming the loan was

paid off then and that is the rebate of interest, right above it, $436.00?

"Now, this $2900 figure is the gross balance, that is the balance you paid out over the next number of months left in the loan?

"A. Yes, sir.

"Q. So on September the 30th or October the 11th, is it not a fact that the principal balance is substantially less than the $2900 figure you just testified to?

"A. Yes, sir, it would be.

"Q. I see. So the amount owed on this loan had it been paid off on October the 11th, would not have been $2900 but substantially less than that?

"A. Yes, sir, twenty-five—whatever it is.

"Q. All right: Now, is it also not true that this statement reflects the charges for the repossession, the cost or the expenses of repossessing that vehicle?

"A. That, I don't know because I don't know how to figure a payoff.

"Q. You don't know how to figure a payoff?

"A. No.

"Q. So all of your testimony then is based on what someone else has figured from an original record?

"A. Yes, sir.

"MR. GALESE: Judge, again we move to exclude this. He has testified not only does he not have an independent recollection but that he doesn't even know how to figure a payoff.

"MR. HAIRSTON: Judge, I wasn't the one that asked him about the payoff.

"MR. GALESE: It's establishing his testimony.

"THE COURT: All right. Overrule.

"MR. GALESE: We except."

Plaintiff says this witness' testimony concerning the balance due should have been excluded for the reason that the witness had no independent recollection of the balance due, and was testifying from a memo prepared by someone else from Chrysler Credit's original books and records.

Defendants reply that the witness testified from independent recollection that the balance due was $2,900; then, when shown the account card, testified, after having his memory refreshed, that the amount was $2,964.45 as of September 30, 1974. Defendants also say that the testimony sought to be excluded was based on the refreshed recollection of the witness and was due to be admitted. Reliance for this position is grounded on Title 7, Section 415, Code of Alabama 1940, as Recompiled 1958, and the case of *Mitchell v. City of Mobile*, 244 Ala. 442, 13 So.2d 664. In that case, a ledger sheet was held admissible upon the deposition of a chief clerk that the ledger was a record of his department, kept in the regular course of business. The clerk disclaimed any personal knowledge of the accuracy of the data entered thereon, but did testify that he supervised the clerks who maintained the ledger.

■■ The principle to be gleaned from the statute and the *Mitchell* decision is that, where a witness can establish that a record is kept in the regular course of business, that record is admissible, even though the maker or entrant has no personal knowledge of the truth of the matter recorded. We do not believe the witness here established the predicate necessary for admissibility. In the case at bar the witness testifying from the contents of the record did not prepare the record. Furthermore, the memo which the witness used to refresh his recollection was not the original business record kept by Chrysler Credit in its office. In these circumstances, the principle espoused in *Mitchell* does not apply. However, we do not believe that this conclusion would warrant our finding that the refusal of the trial court to exclude this testimony requires a reversal of the case for a new trial.

For a case to be reversed due to an error of the trial court, it must appear that substantial rights of appellant have been prejudiced thereby. In the present case no prejudice resulted to plaintiff because of the trial court's refusal to exclude the complained of testimony. One of the counts of the complaint alleged that there had been a conversion of plaintiff's car. The evidence in question here related to the balance due on the account on the day of repossession and could only serve the purpose of proving damages. We have upheld the trial court's finding that no conversion had occurred, hence evidence of damages for the conversion is inconsequential. We therefore do not believe that any substantial rights of plaintiff were injured by the admission into evidence of the complained of testimony.

No prejudicial error having been argued, the judgment of the trial court is affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.