From a judgment of the Circuit Court of Houston County sitting without a jury, Lowe's of Dothan, Inc., the plaintiff below, takes this appeal. The judgment awarded Lowe's $6,402.91 of the $12,189.88 sought by the complaint.
Lowe's contends reversal of the judgment below is required in that:
(1) The damages awarded to Lowe's are inadequate.
(2) The trial court erred in striking Count III of Lowe's amended complaint.
We resolve these issues in accordance with the actions of the trial court and, accordingly, affirm.
The record and judgment, viewed with the attendant presumptions of correctness, indicates the following:
Prior to March 28, 1973, Mr. John Ralph Reaves, one of the defendants below and appellees herein, owned a sole proprietorship called Acme Drywall Company. Mr. Reaves had an open end credit account with Lowe's which enabled him to purchase building materials on credit. On March 28, 1973, the sole proprietorship became a partnership which continued to operate as Acme Drywall Company. The partners consisted of Mr. Reaves and Mr. Carl D. Johnston. Ownership was equally divided between the two; and they, as well as Acme Drywall Company, were the defendants below and are the appellees herein.
On March 28, 1973, Mr. Reaves and Mr. Johnston went to Lowe's where they talked with Mrs. Linda Crouse, the office credit manager. The purpose of the visit was to obtain a final balance of the Acme proprietorship account so that it could be extinguished and a new line of credit extended to Acme the partnership.
On that day, Lowe's indicated the proprietorship had purchased $9,649.13 in materials. Mr. Reaves and Mr. Johnston issued a check payable to Lowe's for this amount.
Thereafter, on April 9, 1973, Mr. Johnston and Mr. Reaves each individually executed a separate document entitled "Credit Application." In addition to blanks requiring disclosure of relevant personal data, each of the documents contained the following:
 "STATEMENT: In consideration of credit being extended by Lowe's to me/us/it, I and/or we certify the truthfulness and veracity of the statement appearing above, and I and/or we guarantee and bind ourselves to the faithful payment of all amounts purchased or now owing, by us or either of us, or any other person, firm, or corporation for our benefit. If credit is extended to a corporation in which we, or either of us, or I am an officer, or in which an interest exists I and/or we will personally faithfully guarantee the payment of all credit extended to said corporation.
 "STATEMENT: In the event this account is placed in the hands of an attorney for collection or suit instituted to collect same or any portion thereof, I and/or we agree and promise to pay an attorney's fee of 15% of the balance then due and owing."
Also, Mr. Johnston and his wife, Jean, on June 6, 1973, signed a statement whereby they agreed to pay:
 "[A]ll accounts due Lowe's of Dothan, Inc., Dothan, Ala., for purchases made in the name of and charged to Acme Drywall."
Lowe's extended credit to Acme after formation of the partnership. Consequently, Acme made numerous credit purchases. Amplification of the accounting procedures *Page 168 
circumscribing these transactions is a necessary predicate to further discussion of the events which transpired.
The records of these credit transactions were maintained by Lowe's in two different fashions. Prior to June 26, 1973, Lowe's kept a master account card on which every credit purchased by Acme was entered. Lowe's also retained a separate job account card of each job which Acme had in progress. Thus, orders placed by Mr. Reaves, when he was the sole owner of Acme, or by either Mr. Reaves or Mr. Johnston, after the formation of the partnership, were entered on both the appropriate separate job account card and also the master card. During the relevant time frame, Acme had approximately 12 to 30 jobs in progress.
The entries on the account cards were based on data derived from sales ticket invoices which were filled out by salesmen at the time orders were placed. These sales ticket invoices did not constitute verification of delivery but merely established that the material had been ordered. If an Acme employee was present on the job site at the time of delivery, the deliveryman was to obtain a signature from that individual verifying receipt of the order. There was no showing by Lowe's that they reconciled invoices and delivery tickets.
Lowe's, upon receipt of a payment by Acme, would allocate the proceeds therefrom among various job accounts. For instance, in return for Mr. Reaves' and Mr. Johnston's $9,649.13 check of March 28, 1973, Lowe's later issued the following receipt:
 "Jack Creel Job 114.03 Eagle Homebuilders Job 1,001.26 Femdor Sub Crestview Fla. Job 605.10 Smith Homebuilders Job 316.59
. . . . . .
 -------- 9,649.13
"Paid Check # 2223"
Thus, $114.03 of the $9,649.13 was applied to the Jack Creel job account, etc. According to the testimony of Mrs. Crouse, credits for these amounts were entered on the corresponding job account cards. Apparently, Lowe's also entered some credits on the master account card, although none for the $9,649.13 check were entered thereon.
With these record keeping procedures in mind, we turn now to the conflicting testimony presented by the parties.
As previously stated, Mr. Reaves and Mr. Johnston sought to close the proprietorship account on March 28, 1973. The receipt which was given to them at some later time for the $9,649.13 check also contained the following entry:
"Bal. Due 4-10-73 $3,759.21 Upchurch"
Mrs. Crouse, who either personally made or supervised all account entries, had no knowledge of where the data supporting such an entry could have come from; nor did she know who made the entry on the receipt.
Mr. Charles Skeen, a certified public accountant, on the basis of information derived from Lowe's account cards and cancelled Acme checks, testified that as of December 24, 1973, Acme owed Lowe's $12,189.88. However, on cross examination, Mr. Skeen unequivocally stated that $6,417.13 in checks issued by the partnership after March 28, 1973, had been applied to pre March 28, 1973, debts of Acme the proprietorship. Mr. Skeen testified that had this $6,417.13 been credited to the Acme partnership account, the partnership would have been indebted to Lowe's for $5,567.75.
Mr. Reaves testified in substance that Lowe's had charged the proprietorship $2,885.88 for materials on the "Halstead" job which he was uncertain that he had ever received. He further stated that he had been billed $2,637.98 for undelivered sheetrock for the "Weber" condominium job.
Mr. Gilliam, Lowe's store manager, testified that he never received any complaints from Mr. Reaves or Mr. Johnston concerning nondelivery of materials ordered or overcharges on their statements. Suffice it *Page 169 
to say that Mr. Johnston's testimony regarding this point was directly opposed to Mr. Gilliam's.
Against this background on March 30, 1976, the trial court entered a judgment for Lowe's in the amount of $6,402.91.
On May 20, 1976, Lowe's made a motion for a new trial, asserting as a basis therefor error by the trial court in striking Count III to its amended complaint. Count III states:
 "1. On April 9, 1973, the Defendant, John R. Reaves and the Defendant, Carl D. Johnston, each made a credit application with Plaintiff, and in their respective credit applications each agreed, among other things, that in consideration of credit being extended by Plaintiff to each of them, each guaranteed and bound himself to the faithful payment of all amounts purchased or now owing by them, or either of them, and each further agreed in their respective credit application to pay an attorney's fee of 15% in the event said account was placed in the hands of an attorney for collection or suit.
 "2. A copy of the credit application of John R. Reaves to hereto annexed as Exhibit `A' and a copy of the credit application of said Carl D. Johnston is hereto annexed as Exhibit `B'.
 "3. Defendants John R. Reaves and Carl D. Johnston owe Plaintiff the sum of $12,189.88 for goods sold and delivered by Plaintiff to said Defendants from, to wit, February 1, 1973 through December 24, 1973.
 "WHEREFORE, Plaintiff demands judgment against Defendants in the sum of $12,189.88, plus interest, attorney's fees and costs."
From a denial of the motion for a new trial Lowe's takes this appeal.
 I
As previously stated, Lowe's questions the sufficiency of evidence sustaining the judgment rendered below; and, as we noted earlier, they specifically contend the amount of damages awarded are inadequate.
The evidence hereinabove indicates the difficult task which confronted the trial court. Conflicting claims were presented as to what material had been delivered. Moreover, accuracy of the bookkeeping entries, which constituted Lowe's proof of damages sustained, was questionable.
Mrs. Crouse testified that the $9,649.13 check of March 28, 1973, issued by Mr. Reaves and Mr. Johnston, was to "straighten out" the previous proprietorship account of Acme. However, she was uncertain as to the source of the April 10, 1973, entry on Mr. Reaves' receipt stating Acme owed an additional $3,759.21. She stated that no credit for $9,649.13 was entered on the master account card. Mr. Reaves testified that Mrs. Crouse had informed him that $9,649.13 was the entire amount of Acme's indebtedness as of March 28, 1973.
Mr. Skeen testified that $6,417.13 of partnership funds were used to pay proprietorship debts. As counsel for Acme et al. notes, a deduction of this amount from the original sum claimed by Lowe's leaves a resulting balance of $5,567.75. Add to this the 15% attorney's fees which the appellees agreed to pay in the event that suit was instituted and the amount of indebtedness tabulates as $6,402.91, the precise amount of the trial court's judgment.
Put another way, the evidence is conflicting and confusing as to what amount, if any, was owed upon formation of the partnership; what credits were given and to whom; what materials were charged and delivered to appellees. With such evidence before the trial court, it becomes the duty of the trier of fact to resolve such conflicts.
It is appropriate to quote what this court said in AmericanHome Building Loan Association v. Long, 24 Ala. App. 34, 36,129 So. 793, 794:
 "To hold in line with the contention of appellant would in effect necessitate a ruling by this court that the judgment so rendered is manifestly and palpably against the evidence in this case, and that *Page 170 
the preponderance of the evidence is decidedly adverse to the judgment pronounced and entered. This we cannot do under the general and well-settled principle of law that the verdict of a jury, or judgment by the court upon a trial without the intervention of a jury, should not be disturbed unless the adjudication reached below is far afield from the evidence and the law applicable thereto. A rule of this import is declared in the case of Cobb v. Malone, 92 Ala. 630, 9 So. 738. The rule therein stated has been approved and followed by innumerable decisions of the appellate courts of this state."
The case of Cobb v. Malone, supra, was reaffirmed by the Supreme Court on September 25, 1975, in Hubbard Bros.Construction Co. v. Halstead, 294 Ala. 688, 321 So.2d 169.
With such conflicting evidence, the trial court could reasonably have concluded that the proprietorship debt was extinguished by the March 28, 1973, check and thereafter, $6,417.13 in partnership funds was reapplied to those previously paid accounts. Albeit not the sole interpretation to be derived from the evidence, such an interpretation is more than supported by the record. Hence, we cannot say the judgment is plainly and palpably wrong, thereby warranting reversal.
 II
Lowe's contends the trial court erred to reversal in striking Count III of its amended complaint. Whether the court did in fact strike the entire count or only the exhibits attached thereto is unclear. In either event, grounds for reversal are lacking, for there is no showing that Lowe's was prejudicially affected thereby.
The exhibits were stricken from the amended complaint. However, that the trial court considered them in arriving at its decision is manifestly apparent from this statement made by the trial court in ruling on Lowe's motion for a new trial:
 "THE COURT: I considered it. It was admitted. Those were admitted in the evidence and I considered them."
Clearly, our review of the record shows the documents to have been admitted. Introduction of the documents into evidence and consideration of them precludes any prejudicial effect which might otherwise have been occasioned by the striking of the exhibits from the complaint. It is a well established principle of law in this state that error, if indeed error existed in this instance, without injury will not work a reversal of the decree below. Schneider v. Mobile County, 284 Ala. 304,224 So.2d 657; Speigle v. Chrysler Credit Corporation, 56 Ala. App. 469, 323 So.2d 360; 2A Ala. Digest Appeal and Error 1026.
 "For a case to be reversed due to an error of the trial court, it must appear that substantial rights of appellant have been prejudiced thereby. . . ." (Speigle, supra, 56 Ala. App. at 478, 323 So.2d at 367)
Similar rationale is applicable to the alleged ruling of the court with respect to Count III. Assuming arguendo that the count was stricken in its entirety, we perceive no injury to Lowe's therefrom.
The transaction to which Count III referred was identical to the other counts of the complaint. To this court, Count III was but another manner of stating that the defendants-appellees were indebted to Lowe's for $12,189.88, plus attorney's fees, interest, and cost. Moreover, we note that Lowe's has failed to enunciate any manner in which the ruling operated to its detriment.
Lowe's also claims the lower court erred to reversal by failing to hold an incoming partner liable for debts for the old firm when he has expressly assumed the debts by a written guaranty agreement. Our view of the evidence requires no discussion of this issue. The trial court, to this court, could reasonably have concluded there were no pre-existing debts of Acme, the proprietorship, to be paid. *Page 171 
It follows that the judgment of the trial court is without error and is to be affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.