Christopher Callaway and Joy Callaway appeal from a judgment as a matter of law entered in favor of Michael Whittenton. They argue that their claims alleging wrongful repossession and trespass should have been submitted to the jury. We affirm the trial court's judgment as a matter of law as to the trespass claim, reverse it as to the wrongful-repossession claim, and remand the case.
 I.
On May 10, 2000, Christopher Callaway purchased a 1993 Geo Tracker sport utility vehicle from Summerdale Budget Auto 
Truck, Inc.("Budget"). Baldwin Finance, Inc., which financed the Callaways' purchase of the Tracker, held a lien on the Tracker; the sales agreement entered into by the Callaways and Budget gave Budget and Baldwin Finance the right to repossess the vehicle in the event of a default. The Callaways did not make the payment due in August. On August 31, 2000, Whittenton, who repossessed cars as an unincorporated independent contractor, repossessed the Tracker without incident. Christopher paid the past-due amount and the repossession fee and retook possession of the Tracker.
The Callaways allege that Budget orally agreed to extend the date the October payment was due to November 24, 2000. The only evidence of this oral agreement is the Callaways' testimony; the record contains no evidence presented by Budget regarding the alleged extension, and there is no evidence of consideration for the alleged agreement to defer the October payment. The Callaways did not make the October payment when it was due, and Whittenton repossessed the Tracker again on November 6, 2000, at approximately 11:00 a.m. The second repossession is the subject of this action.
The parties disagree as to what happened on November 6, 2000. What follows is the not altogether consistent account of events according to the Callaways. Joy heard noises outside their residence, and when she went outside to see what was happening, she saw Whittenton, who was repossessing the Tracker. Joy asked Whittenton to leave the property, but *Page 854 
Whittenton continued with the repossession. Joy went back inside the house and told Christopher that Whittenton was taking the Tracker. Christopher told Whittenton to stop and told Whittenton that he needed to get some things out of the Tracker before Whittenton took it. Joy telephoned Budget to make sure that the due date for the October payment had been extended and, while she was on the telephone with Budget, she heard Christopher talking to Whittenton. Then, she heard her husband scream. The following events apparently preceded his scream. Whittenton had secured the Tracker to his truck, and Christopher saw Whittenton walk around to the driver's side of his truck and get in. Whittenton was not looking in Christopher's direction when Christopher walked outside. Christopher grabbed the roll bar on the Tracker as Whittenton began to drive away. Christopher banged on Whittenton's truck and yelled to get Whittenton's attention. Then, as Whittenton was driving down the driveway, the Tracker hit a pothole, and Christopher lost his balance. While he was trying to regain his balance, the rear tire on the driver's side of the Tracker ran over Christopher's foot. Christopher then grabbed the roll bar on the Tracker again so that it would not run over him. Whittenton continued driving, dragging Christopher down the driveway and 60-100 feet down Highway 10. One of the vehicles ran over the family's cat.
Whittenton's testimony differs markedly from that of the Callaways. He says that he did not have a conversation with Joy as he was hooking up the Tracker in order to tow it, and that he saw Christopher run through a ditch, run beside the Tracker, and jump onto the vehicle. Whittenton testified that he stopped his truck after turning onto Highway 10 because he saw Christopher jump between the truck towing the Tracker and the Tracker. Another witness, Ronnie Black, testified that he saw Christopher run through a ditch and jump onto the Tracker while it was on Highway 10.
The Callaways sued Whittenton, Budget, and Baldwin Finance, alleging assault and battery, negligence, wantonness, trespass, civil conspiracy, and wrongful repossession (a violation of § 7-9-503, Ala. Code 1975 (secured party's right to take possession after default; replaced by § 7-9A-609)); Joy alleged loss of consortium. Budget and Baldwin Finance separately moved to compel arbitration, and on October 30, 2001, the trial court granted their motions.[1] The Callaways' claims against Whittenton were tried.
On December 12, 2002, at the close of the Callaways' case, the trial court granted Whittenton's motion for a judgment as a matter of law as to the wrongful-repossession, trespass, and civil-conspiracy claims. The remaining claims-negligence, wantonness, assault and battery, and loss of consortium-were submitted to the jury. The jury found in favor of Whittenton on all claims. The Callaways appeal the trial court's judgment as a matter of law as to their claims of wrongful repossession and trespass.
 II.
The standard of review for a ruling on a motion for a judgment as a matter of law is well settled:
 "`An appellate court, when reviewing a ruling on a motion for a judgment as a matter of law, uses the same standard the trial court used initially in granting or denying the motion. Palm Harbor Homes, Inc. v. Crawford, *Page 855 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350
(Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present "substantial evidence" in order to withstand a motion for a judgment as a matter of law. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, supra, at 1353. In reviewing a ruling on a motion for a judgment as a matter of law, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id.
Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).'
 "Bell v. T.R. Miller Mill Co., 768 So.2d 953, 956
(Ala. 2000) (footnote omitted). `[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Eagle Prods., Inc. v. Glasscock, 882 So.2d 280, 282 (Ala. 2003).
 III.
For the Callaways to prevail, they must present sufficient evidence to allow the issue to be submitted to the jury. Section7-9A-609, Ala. Code 1975, states:
"After default, a secured party:
"(1) may take possession of the collateral. . . .
 "(b) . . . A secured party may proceed under subsection (a):
"(1) pursuant to judicial process; or
 "(2) without judicial process, if it proceeds without breach of the peace."[2]
Although the Callaways allege that Budget agreed to allow them to make the October payment late, there is no evidence in the record that the Callaways supplied any consideration for the alleged agreement. See Big Three Motors, Inc. v. Rutherford,432 So.2d 483, 488 (Ala. 1983), in which Chief Justice Torbert, concurring specially, stated "an agreement to extend the time of payment of a previously due obligation must be based itself on adequate consideration. Webb v. Dickson, 276 Ala. 553, 165 So.2d 103
(1964)." Christopher admits that he had not made the October payment on the Tracker before Whittenton repossessed it. Therefore, the Callaways were in default under the purchase agreement, and Budget was entitled to take possession of the car. However, Budget was required to take possession without causing a breach of the peace.
This Court, in Madden v. Deere Credit Services, Inc.,598 So.2d 860 (1992), describes the right of self-help repossession as a "limited privilege": *Page 856 
 "Under Alabama law, the secured creditor, in exercising the privilege to enter upon the premises of another to repossess collateral, may not perpetrate `[a]ny act or action manifesting force or violence, or naturally calculated to provide a breach of the peace.' Neither may a creditor resort to constructive force, such as `threats or intimidation,' or to `fraud, trickery, chicanery, and subterfuge.'
 "The phrase `breach of the peace' has been further defined as any `situation tending to disturb the public order.' It is `a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace, or, as is sometimes said, it includes any violation of any law enacted to preserve the peace and good order.' Consequently, actual `[c]onfrontation or violence is not necessary to finding a breach of the peace.'"
Id. at 865 (citations omitted). This Court in General FinanceCorp. v. Smith, 505 So.2d 1045, 1048 (Ala. 1987), stated that § 7-9-503 (now § 7-9A-609) "allows the secured party to proceed without judicial process only if that can be done peacefully (i.e., without risk of injury to the secured party, the debtor, or any innocent bystanders)."
In W.J. Speigle v. Chrysler Credit Corp., 56 Ala.App. 469,323 So.2d 360 (Ala.Civ.App. 1975), the Court of Civil Appeals held that there was no breach of the peace when the secured creditor parked behind the debtor's car in order to prevent the debtor from leaving the secured creditor's parking lot. The Court of Civil Appeals stated:
 "[T]he record present[ed] no evidence of any threats or rude language spoken by the defendants or their agents during the repossession. . . . Since there is no evidence that any actual physical force or constructive force was exercised by defendants in carrying out the repossession of the vehicle or that a breach of the peace occurred during that time, the trial court's finding [that there was no breach of the peace] is not erroneous."
56 Ala.App. at 474, 323 So.2d at 363.
4 James J. White Robert S. Summers, Uniform Commercial Code
§ 34-7 (4th ed. 1995), states:
 "[T]he great majority of courts find unauthorized entries into the debtor's residence to be breaches of the peace, and may find entry into his garage to be such a breach. As one moves away from the residential threshold to the yard, the driveway, and finally the public street, however, the debtor's argument becomes progressively more tenuous. We have found no case which holds that the repossession of an automobile from a driveway or a public street (absent other circumstances, such as the debtor's objection) itself constitutes a breach of the peace, and many cases uphold such a repossession."
(Footnotes omitted.)
In Chrysler Credit Corp. v. Koontz, 277 Ill.App.3d 1078,661 N.E.2d 1171, 214 Ill.Dec. 726 (1996), the Appellate Court of Illinois found that there was no breach of the peace when the debtor ran outside while the creditor was repossessing the car and yelled, "Don't take it," and the creditor continued the repossession of the car. In Clark v. Auto Recovery Bureau Conn.,Inc., 889 F.Supp. 543 (D.Conn. 1994), the repossessing team had hooked the plaintiff's car to the tow truck and had started driving away when the plaintiff voiced an objection to the repossession and started moving toward the car. A third person restrained the plaintiff, and the car was successfully repossessed. The court stated: "`Once a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been *Page 857 
completed.'" 889 F.Supp. at 547 (quoting James v. Ford MotorCredit Co., 842 F.Supp. 1202, 1209 (D.Minn. 1994)). In Clark, the car had already been moved from its parking spot when the plaintiff began objecting to the repossession.
On the other hand, in Burgin v. Universal Credit Co.,2 Wash.2d 364, 98 P.2d 291 (1940), and Sanchez v. Mbank of ElPaso, 792 S.W.2d 530 (Tex.Ct.App. 1990), the courts held that the creditor was liable for the debtor's injuries when the debtor offered passive physical resistance, such as refusing to leave the car. In DeMary v. Rieker, 302 N.J.Super. 208, 695 A.2d 294
(1997), the court held that a breach of the peace occurred when the debtor, who had positioned herself on the passenger side of the truck towing the collateral before it pulled away, was thrown from the truck.
The parties before us dispute the events that took place on November 6, but the testimony of the Callaways, though somewhat contradictory, is substantial evidence that the repossession was not accomplished "peacefully (i.e., without risk of injury to the secured party, the debtor, or any innocent bystanders)." Smith,505 So.2d at 1048. Christopher's testimony, if it is to be believed, is that while the Tracker was still in the driveway, he was beating on the side of Whittenton's truck and yelling loudly enough to get Whittenton's attention as Whittenton began to drive away:
"Q. How were you speaking?
 "A. I was yelling. I mean I was trying to speak in an audible enough voice where he [Whittenton] could hear me.
"Q. Were you banging or anything like that?
 "A. I had been banging on the side of his [Whittenton's] vehicle, yes.
"Q. Was that prior to your foot being run over?
 "A. Yes. And at that point I had smacked the side of his vehicle about, I would say, four or five times extremely hard enough to get his [Whittenton's] attention."
Christopher testified that the Tracker ran over his foot, that he grabbed the roll bar on the Tracker, and that Whittenton continued to drive the truck towing the Tracker, dragging Christopher down the driveway.
Viewing the evidence in the light most favorable to the Callaways as the nonmovants, as we must, we conclude that the Callaways presented sufficient evidence from which a jury could conclude that a breach of the peace occurred during the repossession because Whittenton used physical force to overcome Christopher's efforts to prevent the removal of the Tracker from the Callaways' front yard. Because we find that the Callaways' wrongful-repossession claim should have been submitted to the jury on the question whether there had been a breach of the peace before the Tracker was removed from the Callaways' property, we reverse the judgment as a matter of law as to this issue and remand the case for further proceedings consistent with this opinion.
 IV.
The Callaways also argue that the trial court erred in granting Whittenton's motion for a judgment as a matter of law as to their trespass claim. Restatement (Second) of Torts § 158 (1965) states:
 "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
 "(a) enters land in the possession of the other, or causes a thing or a third person to do so, or
"(b) remains on the land, or
 "(c) fails to remove from the land a thing which he is under a duty to remove." *Page 858 
The Court of Civil Appeals in Garrison v. Alabama Power Co.,807 So.2d 567, 570 (Ala.Civ.App. 2001), stated: "We note that `[t]respass has been defined as any entry on the land of another without express or implied authority. . . .'" Also, "[t]respass is the unlawful or wrongful interference with another's possession of property. . . ." Michael L. Roberts Gregory S. Cusimano, Alabama Tort Law § 30.0 (3d ed. 2000).
Whittenton does not deny that he entered the Callaways' property; however, § 7-9A-609 gives a secured creditor the right to enter a debtor's land for the purpose of repossession. See §7-9A-609, Ala. Code 1975, and Madden, 598 So.2d at 865 ("Under Alabama law, the secured creditor, in exercising the privilege to enter upon the premises of another to repossess collateral, may not perpetrate `[a]ny act or action manifesting force or violence, or naturally calculated to provide a breach of the peace. . . .'"). Because Whittenton entered onto the Callaways' property for the purpose of repossessing the Tracker, Whittenton had a legal right to be on the premises, and we affirm the trial court's judgment as a matter of law on this issue.
 V.
Because Whittenton had a legal right to be on the Callaways' premises, he did not trespass on their property; therefore, we affirm the trial court's judgment as a matter of law as to the trespass claim. However, viewing the evidence in the light most favorable to the nonmovant Callaways, as we must, we conclude that they presented sufficient evidence from which a jury could conclude that in repossessing the Tracker Whittenton breached the peace; therefore, the claim alleging wrongful repossession should have been submitted to a jury. We reverse the judgment as a matter of law as to the wrongful-repossession claim and remand the case for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs in the rationale in part and concurs in the judgment.
[1] The arbitration proceeding remains pending; there is some confusion regarding which claims are foreclosed by the trial court's disposition of the claims against Whittenton.
[2] Section 7-9A-609 replaced former § 7-9-503, Ala. Code 1975, which read: "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace. . . ." Neither §7-9A-609 nor § 7-9-503 defines "breach of the peace."