[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11292
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cv-00534-AKK

ALICE WESTBROOK,

Plaintiff - Appellant,

versus

NASA FEDERAL CREDIT UNION,

Defendant,

TWENTY 4 SEVEN RECOVERY INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(January 17, 2020)

Before JORDAN, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Alice Westbrook appeals the entry of summary judgment in favor of Twenty 4 Seven Recovery, Inc. on her claim that Twenty 4 Seven violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., when it repossessed her late husband's car.  Finding no error, we affirm.

I.

Westbrook's husband bought a Dodge Charger that was financed with an installment loan through NASA Federal Credit Union.  The loan agreement gave the credit union a security interest in the Charger in the event of a default on the loan.  After her husband died, Westbrook notified the credit union of his death, which triggered an automatic default.  The credit union made arrangements to repossess the car, and the repossession was assigned to Twenty 4 Seven.

Late in the evening of January 30, 2017, Twenty 4 Seven employee Mike Sproles arrived at Westbrook's home to repossess the Charger.  Westbrook's son, Scott, saw Sproles backing his tow truck up to the Charger, which was parked under an open carport.  Westbrook called the police, and she and her son went outside to confront Sproles and object to the repossession.  They got into a "heated" discussion with Sproles, and Sproles and Scott "exchanged some smart aleck comments."  Scott knew that his mother had kept up with the car payments,

2

so he did not think that the repossession could be legal.  He told Sproles that he could not leave with the car until the police arrived.

A city police officer responded to Westbrook's call.  After confirming that Twenty 4 Seven had instructions from the credit union to collect the Charger, the officer declined to interfere with the repossession.  He instructed Sproles to give Westbrook Twenty 4 Seven's contact information, and Sproles towed the Charger away without further objections from the Westbrooks.

Westbrook sued Twenty 4 Seven in federal court, contending that its repossession of the Charger violated the FDCPA.  The district court granted Twenty 4 Seven's motion for summary judgment, and this appeal followed.

## II.

"We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Agrelo v. Affinity Mgmt. Servs., LLC*, 841 F.3d 944, 949–50 (11th Cir. 2016).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted).

3

III.

Westbrook argues that Twenty 4 Seven's repossession of the Charger violated the FDCPA because Twenty 4 Seven had "no present right to possession of the property" when Sproles towed the vehicle away. 15 U.S.C. § 1692f(6)(A). She does not dispute that her husband's car loan went into default after his death or that Twenty 4 Seven had the right to repossess the vehicle on behalf of the credit union after the default. Instead, she argues that Twenty 4 Seven lost the "present right to possession" when she and her son objected to the repossession and got into a "heated" discussion with Sproles.

Westbrook relies on Alabama law, which permits secured creditors to take possession of collateral after default "without judicial process, if it proceeds without breach of the peace." Ala. Code § 7-9A-609(b)(2). But even assuming for the sake of discussion that a breach of the peace under Alabama law would cause a creditor to lose the "present right to possession" of the collateral within the meaning of the FDCPA, there was no evidence from which a jury could find that a breach of the peace occurred during the encounter with Sproles.

Alabama's "self-help" repossession statute "allows the secured party to proceed without judicial process only if that can be done peacefully (i.e., without risk of injury to the secured party, the debtor, or any innocent bystanders)." *Callaway v. Whittenton*, 892 So. 2d 852, 856 (Ala. 2003) (quoting *Gen. Fin. Corp.*

4

*v. Smith*, 505 So. 2d 1045, 1048 (Ala. 1987)).  Actual "violence is not necessary to finding a breach of the peace"; the statute also prohibits the use of "constructive force, such as 'threats or intimidation.'"  *Id.* (quoting *Madden v. Deere Credit Servs., Inc.*, 598 So. 2d 860, 865 (Ala. 1992)).  A "breach of the peace" may also include the use of "fraud, trickery, chicanery, and subterfuge," "a disturbance of the public tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace," or the "violation of any law enacted to preserve the peace and good order."  *Id*.  The "heated" conversation that Westbrook and her son had with Sproles does not even arguably rise to this level.

Westbrook has not alleged that Twenty 4 Seven used fraud, trickery, or chicanery to repossess the Charger, or that Twenty 4 Seven used any force or constructive force; she concedes that Sproles did not touch her or threaten or intimidate her or her son in any way.  Sproles did not try to take her car keys from her or try to keep her from getting her belongings out of the car.  And there was no need to forcefully overcome any physical resistance from the Westbrooks, since neither of them made any effort to physically obstruct the repossession.

Nor did Sproles say anything to provoke a breach of the peace.  He did not curse or yell at them—there is no evidence that he even raised his voice. Westbrook testified that Sproles "had a little smart attitude, but he didn't say anything out of the way."  Scott testified that he was upset and angry at Sproles

and "felt like just punching him in the nose"—partly because of the situation and partly because of Sproles's "smart aleck" attitude—but he did not hit Sproles or threaten to do so. To the contrary, although Scott made some "snarky" comments, he tried "to just keep peace" and did not offer Sproles any violence or even yell at him. These circumstances—which are undisputed by the parties—do not amount to a breach of the peace under Alabama law. *See id.* (citing with approval *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1173–74 (Ill. Ct. App. 1996), in which the Illinois Court of Appeals held that the debtor's yelling "Don't take it!" did not amount to a breach of the peace).

## IV.

The undisputed facts are such that no reasonable jury could find that a breach of the peace occurred while Sproles took possession of the Charger. Thus, even assuming that a creditor's breach of the peace could cause it to lose the "present right to possession of the property" under 15 U.S.C. § 1692f(6), Twenty 4 Seven did not lose that right here, and the district court correctly granted summary judgment in its favor on Westbrook's FDCPA claim. We therefore affirm.

**AFFIRMED.**