**Primmel WALLACE, Plaintiff,**

v.

**CHRYSLER CREDIT CORPORATION and Ralph King, Defendants.**

No. 89–0069–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

June 18, 1990.

On Motion to Alter or Amend
July 27, 1990.

---

Henry S. Keuling–Stout, Big Stone Gap, Va., for plaintiff.

Mark L. Esposito, Bristol, Va., for Chrysler Credit.

Stephen J. Kalista, Big Stone Gap, Va., for King.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

The plaintiff filed a complaint seeking damages arising from the defendants' actions in repossessing his Dodge truck, in which Chrysler had a security interest. The case is before the court on defendants' motion to dismiss pursuant to Fed.R.Civ. Proc. 8 and 12(b)(6).

■ The complaint states that the plaintiff is a resident of Virginia; that the defendant King is a resident of Tennessee; and that the defendant Chrysler Credit Corporation is organized and exists under the laws of Delaware; and that the amount in controversy exceeds $10,000. The complaint alleges that on April 13, 1988 the defendant Ralph King,[1] a deputy sheriff

---

1. The original complaint identified defendant King as "Deputy Sheriff James Buddy King." In

answer to interrogatories submitted by the plaintiff, Chrysler Credit Corporation identified

for Sullivan County, Tennessee, followed plaintiff Primmel Wallace to Big Stone Gap, Virginia, where Wallace was staying with his daughter, and, at approximately 2 o'clock in the morning, "breached the peace by entering the truck owned by the plaintiff, starting the truck, racing the motor of the truck, [and] barrelling out of the lot and down the street." Wallace and his daughter did not know what was happening and were in fear. When Wallace and his daughter approached King "to discuss what [he] had done," [2] King "very hatefully and gritting his teeth pointed his finger at Wallace and his daughter and said, 'Listen here, don't start with me, I will throw you in jail so fast it will make your head spin.'" He stated that he was a deputy sheriff "and had full authority to back up his threat." The complaint alleges that King acted willfully, intentionally and wantonly, and deprived Wallace of his property without due process. Jurisdiction was claimed under 18 U.S.C. § 1332, 42 U.S.C. § 1983, and 28 U.S.C. § 1434.[3]

Count I of the complaint recites the plaintiff's allegations, but seeks no specific relief. Count II alleges that the defendants breached the peace in violation of Va.Code Ann. § 8.9–503 [4] "which damaged plaintiff's property and caused plaintiff personal injury." Count III alleges that King's actions were "intentional, wilful and wanton and in reckless disregard of the rights of the plaintiff," and that as a result

of these actions Wallace "was injured and suffered emotional distress and deprivation of personal property and rights."

Defendant Chrysler Credit Corporation has filed a motion for dismissal under Fed. R.Civ.P. 8 and 12(b)(6), for failure to state a claim upon which relief may be granted, and because the complaint is so vague and ambiguous as to the relief sought against Chrysler that it cannot frame a responsive pleading. Defendant Ralph King has moved to dismiss on the grounds that the court lacks subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1); that venue is improper under Fed.R.Civ.P. 12(b)(3); and that the complaint fails to state a claim upon which relief can be granted under 12(b)(6).

The court believes that it has proper jurisdiction over the subject matter: there is complete diversity of citizenship between the parties, and, as will be developed further, Count III of the complaint essentially alleges a violation of 42 U.S.C. § 1983. Venue is correct under 28 U.S.C. § 1391, which provides that venue is proper in the judicial district in which the claim arose. Although it is true that defendant King is not a resident of the Western District of Virginia, the claim arose from his alleged actions in this district.

In support of its motion to dismiss under Rule 8, Chrysler states that the plaintiff is

the individual who repossessed the plaintiff's truck as Ralph King. Thereupon, the defendant James Buddy King was dismissed from the suit by order of the court, and Ralph King substituted in his place.

**2.** Counsel for the plaintiff stated at oral argument that this incident occurred hours after the truck was repossessed, on the premises of a Dodge dealer in Kingsport, Tennessee. Since this is not stated in the pleadings, and since the court has no desire to turn the Rule 12(b)(6) motion into a Rule 56 summary judgment motion, the court will make its decision based solely on matters appearing in the pleadings.

**3.** Under the heading "Parties and Jurisdiction" in the complaint, counsel states that: "This suit is brought under 42 U.S.C. § 1983." § 1983 provides redress for deprivation of rights under color of state law, but does not in and of itself bestow jurisdiction of the action on federal

courts. *Blue v. Craig,* 505 F.2d 830, 836 (4th Cir.1974). 28 U.S.C. § 1332 (not Title 18 as stated in the complaint) at the time the cause was filed gave federal district courts jurisdiction in all civil actions where the amount in controversy exceeded $10,000 and was between citizens of different states. 28 U.S.C. § 1434 does not exist, but the court assumes that plaintiff was referring to 28 U.S.C. § 1443, which allows removal of state court actions to federal court "for any act under color of authority derived from any law providing for equal rights." This action, however, was not originally commenced in state court.

**4.** Va.Code Ann. 8.9–503 (1965) states:

Unless otherwise agreed a secured party has on default a right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.…

seeking damages only from King and the relief sought from it is "indiscernible." In the alternative, Chrysler asks that the plaintiff be required to clarify the basis of its claim and specify the relief it is seeking.

The relief the plaintiff has asked for is set out under the heading of "Damages" at the end of his complaint. They are:

1. Loss of personal property (vehicle and personal property in it);
2. Loss of wages;
3. Emotional injury and distress;
4. Legal fees and expenses.

The complaint goes on to ask that the court "enjoin and invalidate" the sale of Wallace's Dodge truck "as being a breach of the peace and a violation of due process," or in the alternative award to him the fair market value as damages; award $50,000 in damages against King; "and other and further relief as this Court may deem appropriate."

At oral argument, plaintiff's counsel explained that he was making the due process claim only against the deputy, while the breach of the peace claim, with emotional distress resulting, sounded against both defendants. With that understanding, the court does not believe that a dismissal under Rule 8 is warranted.

The issues for the court to decide on the remaining 12(b)(6) motions, then, are (1) whether defendants breached the peace in repossessing plaintiff's truck; and (2) whether King's actions violated any of plaintiff's due process rights.

## I.  BREACH OF PEACE

■ The plaintiff admits in his complaint that he had missed two payments on the truck. The Virginia Uniform Commercial Code, Va.Code Ann. § 8.9–503, states that upon default a secured party may repossess the collateral without judicial process "if this can be done without breach of the peace."

### A.  *Origins*

The origins of the self-help remedy for creditors as embodied in today's law go back to the Dark Ages. Self-help was to-lerated because legal institutions were too weak to prevent it. Mikolajczyk, *Breach of Peace and Section 9–503 of the Uniform Commercial Code*, 82 Dick.L.Rev. 351, 351 (1977–78) (citing 2 F. Pollock & F. Maitland, *The History of English Law*, 547 (2d. ed. 1909)). The remedy had been totally abolished by the time of the Norman Conquest, but the practical considerations involved in creditors' needs to protect their property caused its revival; as Blackstone put it: "[I]t may frequently happen that the owner may have this only opportunity of doing himself justice: his goods may be afterwards conveyed away or destroyed ... if he had no speedier remedy than the ordinary process of law." *Id.* at 353, n. 13 (quoting 3 W. Blackstone, Commentaries of the Laws of England 4.) Then as now the creditor had to exercise restraint, according to Blackstone, because "public peace is a superior consideration of any man's private property; and ... this natural right of recaption shall never be exerted where such exertion must occasion strife and bodily contention, or endanger the peace of society." *Id.*

Self-help was recognized in the United States first in court decisions, and then was codified in § 16 of the Uniform Sales Act of 1918. § 9–503 of the U.C.C. was intended to continue the previous law and "not to create any new rights or obligations." *See id.* at 354 and cases cited therein.

Breach of the peace has been generally defined as

a violation of public order, a disturbance of the public tranquility, by an act or conduct inciting to violence or tending to provoke or incite others to break the peace.... It includes any violation of any law enacted to preserve peace and good order.

2 R. Anderson, Wharton's Criminal Law and Procedure § 802 (1957) (footnotes omitted), quoted in Mikolyczyk, 82 Dick. L.Rev. at 355.

Therefore, it has been held that urinating against a wall is not a breach of the

peace;[5] nor was questioning a speaker at a public meeting and interrupting him to make "observations on his statements;"[6] nor was "willfully and wantonly" ringing a doorbell.[7] On the other hand, a customer who abused a shopkeeper over a bill, and continued to do so in the street outside, causing "a large concourse and mob of persons ... to assemble" and obstruct the street, was guilty of a breach of the peace.[8] However, the mere use of loud words in the street, though it may be disorderly, is not a breach of the peace.[9]

### B. Breach of Peace in Virginia

Virginia recognizes a distinction between disorderly conduct and abusive and insulting language reasonably calculated to provoke a breach of the peace. Compare Va. Code Ann. § 18.2-415 with § 18.2-416 (1988). The latter section states that

> If any person shall, in the presence or hearing of another, curse or abuse such other person, or use any violent abusive language to such person concerning himself or any of his relations, or otherwise use such language, under circumstances reasonably calculated to provoke a breach of the peace, he shall be guilty of a class 3 misdemeanor.

In *Mercer v. Winston*, 214 Va. 281, 199 S.E.2d 724 (1973), the Virginia Supreme Court upheld this statute from a challenge to its facial constitutionality. It ruled that as long as the statute was limited to words having a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed, it is not vague or overbroad. *Id.* at 285, 199 S.E.2d at 726.[10]

### C. Breach of Peace and the UCC

A limitation of the meaning of the term "breach of the peace" as it is contained in Article 9 of the Uniform Commercial Code to the circumstances set out in the statute would, however, be too restrictive. Most courts have held that the peace has been breached within the meaning of § 9-503, not only if there has been violence or the threat of violence, but if the creditor has broken and entered the debtor's residence; *see, e.g., General Electric Credit Corp. v. Timbrook*, 291 S.E.2d 383, 385-6 (W.Va. 1982) or broken into other buildings such as garages and stables (but not if they are open). *C.I.T. Corp. v. Short*, 273 Ky. 190, 115 S.W.2d 899, 900 (1938). Creditors may, however, enter on to the debtor's land to repossess the collateral because the vindication of the creditor's security interest is considered more important than a trespass. *Oaklawn Bank v. Baldwin*, 289 Ark. 79, 709 S.W.2d 91, 92 (1986). If, however, the debtor is present and makes an objection, the breach of the peace analysis comes to the fore: the creditor's agent must then desist.

Although there are no Virginia cases precisely delineating these rules, they are consistent with the broad outline of the most recent Virginia authority on repossessions. In *Universal Credit Co. v. Taylor*, 164 Va. 624, 630-1, 180 S.E. 277, 280 (1935), the Virginia Supreme Court noted that

---

**5.** *Booth v. Hanley*, 2 Car. & P. 288, 172 Eng.Rep. 129, 130 (1826).

**6.** *Wooding v. Oxley*, 9 Car. & P. 1, 5-6, 173 Eng.Rep. 714, 716 (1838). The plaintiff attended a meeting of a temperance society, and when the speaker stated that "if a person drank water, his nerves would be hard as iron, and he would be as strong as an elephant, the plaintiff merely said, 'Yes, as a dead elephant,' which caused some laughter, and also made other observations [presumably of a similarly sidesplitting nature] which had the effect of interrupting the speaker and diverting the attention of the meeting from his speech." *Id.* at 2, 173 Eng.Rep. at 715.

**7.** *Grant v. Moser*, 5 Man. & G. 123, 134 Eng.Rep. 507 (1843).

**8.** *Cohen v. Huskisson*, 2 M. & W. 477, 483, 150 Eng.Rep. 845, 848 (Exch. of Pleas 1837).

**9.** *Hardy v. Murphy*, 1 Esp. 293, 170 Eng.Rep. 362 (1795).

**10.** The defendant had been convicted of breach of the peace after participating in "a disturbance which had racial overtones and approached near riot proportions" at which he had addressed several remarks to a Richmond policeman along the lines of "you white son of a bitch," "you honky pig," "you white mother fucker," "white bastard," and "pig." 214 Va. at 282, n. 1, 199 S.E.2d at 725, n. 1.

The right to possession of chattels may be exercised without recourse to the courts, provided this can be done peaceably. It is only when a right of one is denied or resisted by another, that such party must resort to appropriate legal proceedings to enforce that right.

It is evident from the facts alleged in the complaint that the plaintiff did not resist or interpose any objection before his truck was taken; indeed, he had no opportunity to do so, since the truck was gone before he could determine what had happened. It appears to the court that the stealthy manner in which the repossession was effected was calculated to avoid a breach of the peace because the prospect of a confrontation with the plaintiff was less at 2 a.m. than it would have been in the daylight hours or in the early evening. It has been held in almost all jurisdictions that the use of stealth in a self-help repossession is not a breach of the peace. *See, e.g., Ford Motor Credit Co. v. Cole*, 503 S.W.2d 853, 855 (Tex.Ct.App.1973).

The complaint alleges that King breached the peace by "starting the truck, [and] barrelling out of the lot and down the street." But starting a vehicle, racing its engine, and zooming down a street hardly fits Wharton's definition of "a disturbance of the public tranquility, by ... conduct inciting to violence ... or tending to ... provoke or incite others to break the peace...." Even assuming, though there is no such allegation in the complaint, that some traffic regulation may have been violated, the act of doing so was not an incitement to violence or to break the peace. *See also Jordan v. Citizens & Southern Nat. Bank of South Carolina*, 278 S.C. 449, 298 S.E.2d 213, 214 (1982), in which the debtor gave chase when an agent of the creditor repossessed his truck, and the agent was "speeding, failed to observe traffic signals, and drove recklessly." The South Carolina Supreme Court said that it doubted that violations of the traffic laws amounted to a breach of the peace, but "even if it be assumed that they did the conduct was not incident to seizing the truck at the residence of the [debtors].... [B]reach of the peace ... refers to conduct

at or near and/or incident to the seizure of the property." *Id.* Before any traffic regulation could have been violated in this case the repossession was a completed act.

Furthermore, there is authority that the repossession of movable collateral such as cars from property owned by a third party or from a public place cannot amount to a breach of the peace (unless there is opposition to the removal). This is because the debtor's real property interest is not invaded. 82 Dick.L.Rev. at 326 *citing, inter alia, Harris Truck & Trailer Sales v. Foote*, 58 Tenn.App. 710, 436 S.W.2d 460 (1968); *McWaters v. Gardner*, 37 Ala.App. 418, 69 So.2d 724 (1954). Since the plaintiff's truck was located on his daughter's property at the time of its repossession, and no objection was interposed before King had driven it away, there are further grounds for concluding that King did not breach the peace at that time.

▮ The complaint also alleges that King breached the peace by threatening to throw the plaintiff and his daughter in jail when they remonstrated with him about the repossession. Although the complaint does not state exactly when this incident occurred, it is clear from the context that it did not take place until after the repossession had been effected. *See* footnote 2, *supra.* Once a creditor has gained sufficient dominion over his collateral, objection by the debtor will be of no avail. *See First and Farmers Bank of Somerset v. Henderson*, 763 S.W.2d 137, 139, fn. 3 (Ky. App.1988) (bank employees who had removed debtor's boat from his open garage but who were stopped by debtor before they could get out of his driveway had not obtained sufficient dominion to preclude objection); *LaPorte Motor Co. v. Firemen's Ins. Co.*, 209 Wis. 397, 245 N.W. 105, 106 (1932) ("there must be a legal taking including adequate assertion of possession by the seller precluding the buyer from interposing objection and placing upon the one seeking to repossess the duty of resorting to legal proceedings"). The court believes that, whatever else they may have been, the threats, or statements, attributed to King were made after he, and by exten-

sion, Chrysler, had obtained dominion over the truck, and that therefore they could not be the basis for finding that breach of peace occurred during the repossession. "Once the secured party has gained repossession of his collateral," remarks Mikolyczyk, "he has the same right to defend his possession as any other property owner including the right to use reasonable force." 82 Dick.L.Rev. at 370 (citations omitted).

It should be noted, finally, that several courts have held that the full-color presence of a law enforcement officer at a self-help repossession, even though intended to prevent a breach of the peace, establishes an actual breach of peace within the ambit of § 9–503, because, as one court put it, "the net effect [is to] override the debtor's right to object." *First and Farmers Bank*, 763 S.W.2d at 141; *Waisner v. Jones*, 107 N.M. 260, 755 P.2d 598 (1988) (military policeman); *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (1978). Dissents in both *First and Farmers* and *Walker* argued that the mere presence of a law enforcement officer who does not participate in the repossession does not constitute a breach of the peace. Be that as it may, the present case is not one in which repossession was, in any sense, aided by the *force majeure* of defendant King's office. It was only after repossession that plaintiff was even aware that King was a deputy.

The court can detect no theory under which the repossession of plaintiff's Dodge truck was a breach of the peace under the facts alleged. Accordingly, the motions to dismiss for failure to state a claim will be granted.

## II.  *§ 1983*

42 U.S.C. § 1983 provides civil liability for one

who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

Two elements must be proven before a plaintiff can recover under this section:

First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show the defendant acted 'under color of law.'

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

■ The first question that must therefore be answered is whether any of the actions of Deputy King deprived the plaintiff of any of the rights secured to him under the Constitution and laws of the United States. The complaint alleges that King deprived the plaintiff of his property without due process "which is prohibited by the Fourteenth Amendment."

A number of cases have considered the question of whether a law enforcement officer's presence at or participation in a creditor's repossession constitutes action under color of state law. *See, e.g., Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512–13 (5th Cir.1980); *Torres v. First State Bank of Sierra County*, 588 F.2d 1322, 1327 (10th Cir.1978). In such cases, of course, the officers are participating in the removal of the debtor's property while cloaked in the mantle of their authority as agents of the state. Therefore, it is at least arguable that they were depriving him of property without due process. In the present case, however, Deputy King acted as a private citizen, and it does not appear that his status as an off-duty deputy had any bearing on the repossession.

It is not enough that a police officer is off duty to establish that he did not act under color of state law; it is necessary to scrutinize the nature of the act. *Monroe v. Pape*, 365 U.S. 167, 184–6, 81 S.Ct. 473, 482–84, 5 L.Ed.2d 492 (1961), *overruled on other grounds, Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). But the allegations in the complaint make no suggestion or even hint that Deputy King was using his power as an agent of the state in effecting the actual repossession;[11] rather, he acted as any private individual undertaking the same action would have done. *See, e.g., United States v. Coleman,* 628 F.2d 961, 962–3 (6th Cir. 1980). His status as a deputy was completely irrelevant. *Cf. Revene v. Charles County Com'rs.,* 882 F.2d 870, 872–3 (4th Cir.1989) (it was error to dismiss under Rule 12(b)(6) plaintiff's § 1983 action against off-duty deputy who killed plaintiff's decedent where state law said deputies were on duty 24 hours a day and expected to take action as policemen on matters coming to their attention); *Layne v. Sampley,* 627 F.2d 12, 13 (6th Cir.1980) (off-duty officer who shot plaintiff could properly have been found to have been acting under color of state law where he had authority to carry weapon only because he was an officer; where argument that led to shooting had its genesis in his performance of police duties; and where threat to officer was received through the police department); *Stengel v. Belcher,* 522 F.2d 438, 441 (6th Cir.1975). *See also Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) (plurality opinion) ("It is clear that under 'color' of law means under 'pretense' of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded.")

As for the alleged threat to throw the plaintiff in jail,[12] the complaint is clear enough that it occurred only after the repossession had been completed: as Paragraph 8 of the complaint says, King made the threat only when "Wallace, with his daughter, approached the defendant . . . to discuss what [he] *had done . . .*" (emphasis added). As pointed out in part I of this opinion, once a creditor has gained dominion over the collateral, he has the same right to defend its possession as an owner in fee simple, including the right to use force. Whether or not King was on duty at the time he issued the threat to jail the plaintiff if he interfered with him, there can be no question that his actions were under color of state law, since he was using his position as a deputy sheriff. But plaintiff has not shown how the alleged threat deprived him of any rights under the Constitution or laws of the United States.

The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law. The plaintiff was not deprived of his life, and, as we have seen, his property was taken according to Virginia law. Nor was he deprived of any detectable liberty interest: once the truck was in the possession of his creditor it was incumbent upon him to resort to judicial means to recover it, or work out arrangements with the creditor. An order by a deputy sheriff to not, in effect, interfere with his possession of a vehicle which he was authorized and entitled to be in possession of, whatever else it may be, is not a violation of the Constitution. Therefore the plaintiff has no cognizable § 1983 claim. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1978), in which the Supreme Court pointed out:

> Section 1983 imposes liability for violations of rights protected by the Constitu-

---

**11.** The actual repossession took place in Virginia while the defendant King is alleged to have been a deputy in Tennessee. A law enforcement officer who has neither actual nor apparent authority to act in another state cannot be acting under color of state law when outside his jurisdiction because he has no colorable authority there. *Firman v. Abreau,* 691 F.Supp. 811, 813 (S.D.N.Y.1988). Such persons are no different from any private citizen. *Id.* Therefore,

even if King's status as a deputy were somehow implicated in the repossession, since he was not clothed with any authority of state law in Virginia he could not have deprived Wallace of any rights within the ambit of § 1983.

**12.** Assuming that the threat was made within King's jurisdiction in Tennessee. See footnote 2, *supra.*

**1236**

tion, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort law principles. Just as '[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner,' *Estelle v. Gamble,* 429 U.S. 97, 106, [97 S.Ct. 285, 292, 50 L.Ed.2d 251] (1976), false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.

*Id.* at 146, 99 S.Ct. at 2695–96. *See also Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1133, 1139 (4th Cir.1982).

The plaintiff's § 1983 complaint must also be dismissed.

### III. CONCLUSION

The complaint fails to state a claim upon which relief can be granted. Therefore, an Order will enter dismissing the plaintiff's claims.

### ON MOTION TO ALTER OR AMEND

The plaintiff has filed a motion to alter or amend the court's judgment of dismissal of his claims against the defendants, and a motion to amend his complaint to allege additional grounds for relief. The defendants oppose both motions.

Fed.R.Civ.Proc. 15(a) "literally gives the plaintiff an unlimited right to amend once as of course before a responsive pleading is filed." 3 J. Moore, *Moore's Federal Practice,* ¶ 15.07(02) (1989). In response to plaintiff's original complaint, the defendants filed only motions to dismiss, which are not considered responsive pleadings for the purposes of Rule 15. *Sachs v. Snider,* 631 F.2d 350, 351 (4th Cir.1980). However, once the complaint has been dismissed (or disposed of on summary judgment) whether to grant leave to amend is in the discretion of the trial court. *Id. Accord* Moore, *supra,* ¶ 15.07(2); 27 Fed.Proc., L.Ed. *Pleadings and Motions,* § 62:271 (1984).

■ The two new counts (Counts IV and V) really only make one new allegation. Count V is an attempt to restate and expand the § 1983 violation alleged in the original complaint. The court noted no violation of the plaintiff's Fourteenth Amendment rights had been made out, because he had not shown how defendant King, a deputy sheriff, had deprived him of any life, liberty, or property without due process of law: the repossession of plaintiff's Dodge truck had taken place according to law. The plaintiff now alleges that the truck contained personal property valued at $1,000 at the time it was repossessed; that this property has not been returned; and that King "acted under the color of Tennessee state law to take and/or keep personal property belonging to the plaintiff and to keep the plaintiff from pursuing inquiry as to the whereabouts of the property."

As the court pointed out in its opinion, the Supreme Court has made it clear that § 1983 is not intended to be used as a substitute for state tort law remedies. *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695–96. Count V is nothing more or less than an allegation that King converted the plaintiff's property. The suggestion that King's statement prevented the plaintiff "from pursuing inquiries" about the property is frivolous on its face: there were obviously other avenues—officials at Chrysler Credit, King's supervisors—not foreclosed to the plaintiff.

■ Count IV, in essence, alleges that the plaintiff was having difficulties with the front suspension of his truck and had come to an agreement with an official at Chrysler Credit to suspend payments until the suspension was replaced under warranty. It alleges that Chrysler broke the agreement and had the truck repossessed anyway. As a result, plaintiff lost the truck, the $1,000 worth of personal property mentioned earlier, and caused him to lose his job as the manager of a convenience store in Pompano Beach, Florida, to which he was unable to return and would have been unable to perform without a vehicle. The loss of his job has cost him "in excess of $56,000."

Regardless of the merits or demerits of this claim, the court notes that the purpose of Fed.R.Civ.Proc. is to "provide parties an opportunity to assert new matters that may not have been known to them at the time they filed their original pleadings." *Johnson v. Helicopter & Airplane Service Corp.*, 389 F.Supp. 509, 513 (D.Md.1974), *citing* 6 C. Wright & A. Miller, *Federal Practice and Procedure, Civil* ¶ 1473 (1971). The original complaint in this case was filed April 11, 1989. The plaintiff has offered no explanation or justification for failing to allege this count in his original complaint, or for failing to amend the complaint to include it, which he could freely have done at any time before the court entered its judgment and order on June 18, 1990. Courts have not generally allowed attorneys to have two bites at the apple by this practice. *Littlefield v. City of Afton*, 785 F.2d 596, 609–10 (8th Cir.1986); *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir.1967). Judicial economy would not be well served by allowing unsuccessful litigants to reframe their complaints every time the original was dismissed for failure to state a claim. In the absence of a showing of some legitimate reason for not alleging Count IV in the original complaint, the court will deny the motion to amend.

An appropriate Judgment and Order will enter this day.