**Paul E. REIDER, Appellant (C3–91–912) Respondent (C7–91–993, C3–91–1056),**

v.

**CITY OF SPRING LAKE PARK, Resurrection Episcopal Church, et al., Respondents.**

**Cheryl BANTA, Respondent (C3–91–912, C7–91–993), Appellant (C3–91–1056),**

and

**Group Health, Inc., Intervenor, Respondent (C3–91–912, C3–91–1056), Appellant (C7–91–993),**

v.

**Paul E. REIDER, Appellant (C3–91–912), Respondent (C7–91–993, C3–91–1056), City of Spring Lake Park, Resurrection Episcopal Church, et al., Respondents.**

**Nos. C3–91–912, C7–91–993 and C3–91–1056.**

Court of Appeals of Minnesota.

Feb. 4, 1992.

Review Denied April 13, 1992.

Kay Nord Hunt, Mark N. Stageberg, Lommen, Nelson, Cole & Stageberg, Minneapolis, for Paul E. Reider.

Katherine L. MacKinnon, Robert W. Kettering, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for City of Spring Lake Park.

George G. Eck, Dorsey & Whitney, Minneapolis, for Resurrection Episcopal Church, et al.

Alan G. Jontz, Alan G. Jontz & Associates, P.A., Minneapolis, for Cheryl Banta.

Janet Stellpflug, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for Group Health, Inc.

Considered and decided by FORSBERG, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Appellants Paul Reider and Cheryl Banta sued the Resurrection Episcopal Church and the Trustees of the Episcopal Diocese of Minnesota, Inc. ("Church") and the City of Spring Lake Park ("City") for personal injuries they suffered in a motorcycle accident which occurred on Church property. Appellants claimed the Church was negligent in the way it maintained its land, and the City was negligent in maintaining, lighting, and signing the public roadway near the scene of the accident. Appellant Group Health, Inc. intervened to recover medical payments it made on Banta's behalf in the amount of $25,085.92. The jury found damages for Reider in the amount of $216,406.74, and for Banta in the amount of $131,961.60. Group Health was awarded $22,577.33, representing its lien less 10% fault the court allocated to Reider.

The trial court granted the Church's motion for a new trial, holding Reider and Banta were trespassers and the jury instructions were erroneous. The trial court declined to rule on the City's motion for judgment notwithstanding the verdict and its motion for a new trial. Reider, Banta and Group Health all appealed from the court's grant of a new trial. The three appeals have been consolidated.

## FACTS

On September 12, 1985, Paul Reider was driving his motorcycle with Cheryl Banta as his passenger when they struck an unmarked, roadside dirt berm in Spring Lake Park while attempting to return to University Avenue after making a wrong turn into a residential neighborhood. The accident occurred on University Service Drive south of Wyldwood Street, which is a private drive that takes a sharp left turn eastward, terminating at the Church parking lot. Spring Lake Park owned University Service Drive until December 1975, when the City vacated the section of University Service Drive from Wyldwood extending south to the Church entrance.

Reider believed that University Service Drive was a frontage road for University Avenue. Because Reider saw street lights, an intersection, and auto headlights approaching him on University Avenue, he thought he would soon reach the next intersection with University Avenue. Reider was unaware of the street configuration. As Reider proceeded south on University Service Drive, he missed the left turn, continued straight, and his motorcycle struck an unmarked dirt berm barricade. He and Banta were seriously injured.

At the intersection of Wyldwood and University Service Drive were two small, unreflectorized black and white signs saying "Church Entrance." Approximately 50 feet north of the curve in the driveway to the Church parking lot was a sign stating, "The Episcopal Church Welcomes You." Several hundred feet south of the berm there was a sign identifying the Church of the Resurrection. There were no signs in-

dicating University Service Drive was not a straight through, two-way public road.

Two similar motorcycle accidents occurred at this location, as well as an accident where a truck missed the turn and struck the dirt berm. Jack Anderson, a traffic engineer, testified a driver would have a reasonable expectation that University Service Drive was a continuous two-way street, as there was no sign indicating that the road was one-way going north of Wyldwood. Donald Busch, Spring Lake Park's city clerk/treasurer, testified that someone unfamiliar with University Service Drive would be unaware it did not continue south as a public road.

For years the Church had problems with motorists driving into Church property. Prior to Reider and Banta's accident, the Church requested the City post a sign notifying motorists that University Service Drive was not a through street. The City failed to put up a sign with an arrow and a no-outlet sign on Church property as it agreed. Although the City did not notify the Church of the two prior motorcycle accidents, the pastor admitted he saw debris such as glass and parts of motor vehicles in the Church yard on five separate occasions. Numerous times the Church tried to place warning devices on the corner including a sign with arrows, poles, and railroad ties, all of which were subsequently removed. Eventually the Church built the dirt berm just south of the left turn into the parking lot to prevent motorists from missing the turn and driving onto Church property.

Reider and Banta argued they were not trespassers on Church property because Reider reasonably believed University Drive south of Wyldwood was public. At trial, they argued they were entitled to the same standard of care afforded any entrant and requested the following jury instruction:

A possessor of land has a duty to use reasonable care to warn any person entering upon the land to protect the entrant from an unreasonable risk of harm caused by the condition of the premises while he is on the premises.

In determining reasonable care of the landowner, the following factors may be considered:

1. The purpose for which the entrant entered the premises.

2. The circumstances under which the entrant entered the premises.

3. The use to which the premises is put or expected to be put.

4. The foreseeability or possibility of harm.

5. The reasonableness of the inspection, repair, or warning.

6. The opportunity and ease of repair or giving of the warning.

See 4 Minnesota Practice, CIV.JIG 330 (1986).

The Church argued at trial that Reider and Banta were trespassers and requested a jury instruction reflecting that status:

The Resurrection Church was under no duty to a trespasser to maintain its premises in a reasonably safe condition.

If, however, a possessor of land knows or from facts known has reason to know that trespassers regularly use certain portions of the premises and if the possessor creates or maintains an artificial condition on the premises which the possessor knows is likely to cause death or serious bodily harm, and which is such that the possessor has reason to believe that trespassers would not discover it, then the possessor has a duty to use reasonable care to warn a trespasser of the danger or risk involved, unless the trespasser is already aware, or from facts the trespasser knew should have been aware, of the condition of the premises and the risk involved.

See 4 Minnesota Practice, CIV.JIG 326 (1986).

The trial court submitted both jury instructions, apparently finding Reider and Banta's status on Church property involved a question of fact. After the jury was so instructed, Reider objected to the trespasser instruction. The Church objected to the entrant instruction. However, no one argued that giving both instructions was inconsistent, nor that the trial court should

have provided the jury with the legal definitions of trespasser and entrant.

The jury determined the City was 50% negligent, the Church was 40% negligent, and Reider was 10% negligent, but Reider's negligence was not a direct cause of the accident. In its findings of fact, the trial court disregarded the jury's finding and concluded Reider's negligence was a direct cause of the accident and awarded damages accordingly.

In its motion for a new trial, the Church argued reversible error in giving the jury both trespasser and entrant instructions. The trial court agreed and awarded a new trial. The trial court concluded, as a matter of law, that Reider and Banta were trespassers and the jury should have been given that instruction only.

### ISSUES

I. Is the determination of whether appellants are trespassers or entrants a question of fact or law?

II. Did the trial court err by concluding appellants were trespassers?

III. Did the jury instructions contain a fundamental error of law which caused a miscarriage of justice?

### ANALYSIS

■ Ordinarily, the decision whether to grant a new trial rests solely in the discretion of the trial court and will not be overturned by the appellate court absent a finding of a clear abuse of discretion. *Lindstrom v. Yellow Taxi Cab of Minneapolis*, 298 Minn. 224, 230, 214 N.W.2d 672, 677 (1974). However, *de novo* review is appropriate where the trial court exercised no discretion and ruled as a matter of law that the complaining party was entitled to a new trial. *Halla Nursery, Inc. v. Baumann–Furrie & Co.*, 454 N.W.2d 905, 910 (Minn.1990). Therefore, because the trial court's grant of a new trial in this case was based on the legal conclusion that only the instruction for trespassers should have been given to the jury, this court exercises *de novo* review.

Reider and Banta argue a new trial is not warranted. Such action is warranted only where there is fundamental error of law which would " 'destroy the substantial correctness of the charge as a whole,' cause a miscarriage of justice, or result in substantial prejudice on an issue 'vital in the litigation * * *.' " *Clifford v. Peterson*, 276 Minn. 142, 145, 149 N.W.2d 75, 77–78 (1967) (citations omitted). Reider and Banta assert the jury could have found the Church and the City liable regardless of their status as trespassers or entrants and their status on Church property was a question of fact for the jury. Alternatively, they argue the trial court's legal conclusion that they were trespassers was incorrect and provided no basis for granting a new trial.

■ 1. Appellants' legal status while on Church property determines the standard of care the Church and City owed them. Minnesota recognizes the two categories of entrant and trespasser for defining liability to persons injured on another's land, while abolishing the distinctions between a licensee and invitee, both of which are now considered entrants. *Peterson v. Balach*, 294 Minn. 161, 164–65, 199 N.W.2d 639, 642 (1972). A trespasser is "one who enters or remains on the land without the express or implied consent of the possessor of land." *Rieger v. Zackowski*, 321 N.W.2d 16, 20 (Minn.1982). Generally a possessor of land owes a duty to warn or use reasonable care for the safety of an entrant, but not for a trespasser. Restatement (Second) Torts § 333 (1965).

■ The trial court granted a new trial, finding it erred by neglecting to determine whether the trespasser or entrant standard of care applied. The court relied on the general rule that,

[i]t would be inappropriate for the court to allow the jury to choose which rule of law to apply to the facts. The court, not the jury, determines the law of the case, and the jury decides the factual issues based on the law submitted to them.

*Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 425 (Minn.1983).

We agree that the trial court failed to provide the jury with the legal definitions

of entrant and trespasser in this case. We cannot determine which legal standard the jury applied in reaching its verdict. The trial court should have chosen the proper rule of law and submitted the jury instructions accordingly. As submitted, the jury instructions were inconsistent, confusing, and constituted trial court error.

■ 2. Although it was error to give both instructions, we also believe the court erred in concluding Reider and Banta were trespassers. The Church's duty of care arose from the implied invitation to the public to enter the private roadway.

> A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel.

Restatement (Second) Torts § 367 (1965). The Restatement's drafters specifically note that "[t]he injured person, being misled by other's conduct, is clearly not a trespasser." Special Note, Restatement (Second) Torts § 367 (1965).

Like other motorists, Reider was misled to believe the road south of Wyldwood on University Service Drive was a public road. No signs warned Reider he was on a private road. Spring Lake Park's clerk/treasurer testified that University Service Drive appeared to be a public road, and the Church knew that motorists were repeatedly misled to believe the road was public.

Likewise, the signage posted by the Church, as described, was clearly inadequate. None warned of the specific danger, nor used sufficiently obvious materials, such as lights or colored reflectors. The private roadway had no physical barriers or no-trespassing signs to alert Reider that he was entering private property. Therefore, under the Restatement definition, Reider and Banta were not trespassers on Church property.

■ 3. Even if Reider and Banta were trespassers, giving both the trespasser and entrant instructions did not affect the outcome of the case, and therefore does not require a new trial. *See Halla Nursery*, 454 N.W.2d at 911. We believe that, even under the trespasser standard, the Church could be held liable for appellants' damages.

The Church had a duty to warn trespassers of danger on its property. To impose liability for trespassers' injuries, a party must show, "trespassers regularly use[d] certain portions" of Church property. *See* CIV.JIG 326. A Church official testified he was aware prior accidents occurred at the left turn into the Church parking lot. He had seen glass, car parts, and debris in the churchyard on five separate occasions. Furthermore, he knew that motorists frequently turned around on Church property and exited from the parking lot because they mistakenly thought University Service Drive was a through street.

Second, the berm which the Church placed at the curve was "an artificial condition on the premises." *Id.* Furthermore, the Church vestry minutes showed the Church knew the driveway curve and the berm were "likely to cause death or serious bodily harm." *Id.* The Church had reason to believe motorists would not discover the unmarked curve and berm as evidenced by the Church's repeated efforts over the years to install barriers and signs to protect the area. The Church's ineffective efforts to alert motorists of the curve into the parking lot could have led the jury to believe that the Church failed to exercise reasonable care to warn of the dangerous condition. The jury could have based its verdict on the trespasser or entrant standard and arrived at the same result. If there is sufficient evidence to sustain a verdict on any one of the theories upon which a factual issue is submitted to a jury, the verdict shall not be set aside where the verdict is conclusively correct as a matter of law on one or more of such theories. *See Anderson v. Birkeland*, 229 Minn. 77, 79, 38 N.W.2d 215, 217 (1949) (no new trial required where jury found that road had been dedicated for public use without stating upon which theory its finding had been based).

Likewise, the apportionment of fault in this case is not indicative of prejudicial error sufficient to require a new trial. "A new trial should not be granted unless the verdict is so contrary to the preponderance of the evidence as to imply that the jury failed to consider all of the evidence or acted under some mistake or from some improper motive, bias, feeling or caprice, instead of honestly and dispassionately exercising its judgment." *Lamb v. Jordan*, 333 N.W.2d 852, 855–56 (Minn.1983) (quoting *LaValle v. Aqualand Pool Co., Inc.*, 257 N.W.2d 324, 328 (Minn.1977)). The jury could have made the same determination of the parties' negligence and percentage of fault under either the entrant or trespasser theory. Therefore, the jury instructions did not contain a fundamental error which caused a miscarriage of justice or prejudiced the outcome of the case.

Reider and Banta argue further that the trial court should not have declared the dual jury instructions to be a fundamental error since the Church and the City failed to make a timely objection before the jury returned a verdict or in its motion for a new trial. Because we find there was no fundamental error requiring a new trial, we need not address this issue.

## DECISION

The trial court's grant of a new trial is reversed.

Reversed.