Brian K. THOMPSON,
et al., Appellants,

v.

**FIRST STATE BANK OF FERTILE,**
**Respondent,**

**Stuart's Towing and Repair,**
**Respondent.**

No. A05–1328.

Court of Appeals of Minnesota.

Feb. 14, 2006.

Rex A. Hammarback, Hammarback, Dusek & Associates, PLC, East Grand Forks, MN, for appellants.

Raymond J. German, Raymond J. German, Ltd, East Grand Forks, MN, for respondent First State Bank of Fertile.

Gerard D. Neil, East Grand Forks, MN, for respondent Stuart's Towing and Repair.

Considered and decided by PETERSON, Presiding Judge; RANDALL, Judge; and DIETZEN, Judge.

## OPINION

PETERSON, Judge.

In this appeal from summary judgment for a creditor and a towing company in the debtors' action for wrongful repossession of a motor vehicle, appellant debtors argue that the district court erred by determining that the towing company completed the repossession without a breach of the peace. We affirm.

## FACTS

Appellants Brian and Sarah Thompson obtained four loans from respondent First State Bank of Fertile. The loans were secured by liens on two vehicles: a 1988 Toyota 4Runner and a 1995 Chevy Tahoe. The loan agreements that the Thompsons signed state that if the Thompsons are in default, the bank may "[t]ake immediate possession of the [vehicles], but in doing so [the bank] may not breach the peace or unlawfully enter onto [the Thompsons'] premises."

After the Thompsons defaulted on the loans, the bank hired respondent Stuart's Towing and Repair to repossess the vehicles. Stuart Minske, the owner of Stuart's Towing and Repair, testified at a deposition that he drove to the Thompsons' house to repossess the 1995 Chevy Tahoe. Minske drove his tow truck down an alley, backed the tow truck up to the Tahoe, hooked the Tahoe to the tow truck, and lifted the Tahoe's rear wheels off the ground. Minske then noticed some personal items in the Tahoe and went to the door of the Thompsons' house to see if the Thompsons wanted to remove the personal items.

Testimony regarding the conversation between Minske and Brian Thompson at the door conflicts, but it is undisputed that Thompson asked Minske to wait while he called the bank. Whether Thompson invited Minske into the house is disputed. Minske was in the house between 20 and 30 minutes. Thompson first called the bank, and he learned that his loan officer was on vacation. He then called his lawyer.

Thompson's lawyer, James Fischer, testified in a deposition about the conversation between Thompson and Minske. Fischer only heard Thompson's side of the conversation. Fischer testified that he heard Thompson say that "his lawyer advised him that the repo man does not have permission to remove that vehicle or take anything from his house, the keys." He further testified that he did not hear Thompson tell Minske to leave his house. Fischer testified that Thompson "may have said something like my attorney said you can't come in here, or something o[f] that sort."

Minske testified that after leaning against the doorway for 15 minutes while Thompson was on the phone, he looked up and saw keys hanging above his head. Minske testified that he asked if the keys were for the Tahoe, Thompson did not tell him that he could not take the keys, and he took the keys. Thompson testified that he told Minske that he could not take the keys and that Minske walked into the house uninvited and began searching for the keys.

The Thompsons did not take any items out of the Tahoe, and Minske left with the Tahoe. Minske later repossessed the Thompsons' Toyota 4Runner from Crookston Auto Salvage. The bank sold the vehicles approximately six months later.

The Thompsons brought suit against the bank and Stuart's Towing and Repair alleging that the repossession was wrongful under Minn.Stat. § 336.9–609 (2004) because Minske did not take possession of the Tahoe without breach of the peace. Based on its determinations that the repossession was complete before there was any contact between Minske and Thompson and that any conduct after the repossession was complete did not undo the repossession, the district court granted respondents summary judgment. This appeal follows.

## ISSUES

1. Is this appeal timely with respect to respondent Stuart's Towing and Repair?

2. Did Minske take possession of the Tahoe without breach of the peace?

## ANALYSIS

On appeal from a summary judgment, appellate courts

> review whether there are any genuine issues of material fact and whether the district court erred in its application of the law. We view the evidence in the light most favorable to the party against whom summary judgment was granted. We review de novo whether a genuine issue of material fact exists. We also review de novo whether the district court erred in its application of the law.

*STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 76–77 (Minn.2002) (citations omitted).

### 1. Timeliness of appeal

■ Stuart's Towing and Repair argues that this appeal is not timely as to it because all issues affecting it were adjudicated in a judgment entered on February 16, 2005, and the issues addressed in the May 16, 2005 judgment from which this appeal is taken do not involve Stuart's Towing. Summary judgment was granted on February 15, 2005, and judgment was entered on February 16, 2005. But the February 15 order only partially adjudicated respondent First State Bank's counterclaim because it did not determine the bank's damages, and, therefore, the February 16 judgment was not appealable.[1] *See* Minn. R. Civ.App. P. 103.03(a) (providing that appeal may be taken from final judgment or from partial judgment entered pursuant to Minn. R. Civ. P. 54.02); *In re Commodore Hotel Fire & Explosion Case,* 318 N.W.2d 244, 246–47 (Minn.1982) (holding that adjudication that there is liability, without determination of damages, is partial adjudication of claim and is not appealable).

In a March 15, 2005 order, the district court determined the bank's damages. When judgment on the March 15, 2005 order was entered on May 16, 2005, there was a final judgment from which an appeal could be taken within 60 days. *See* Minn. R. Civ.App. P. 104.01, subd. 1 (providing that appeal may be taken from a judgment within 60 days after its entry). The Thompsons filed their appeal on July 7, 2005, which was within 60 days after the final judgment was entered.

### 2. Breach of the Peace

■ After a default, a secured party may take possession of collateral. Minn.

---

1. The judgment was not entered pursuant to Minn. R. Civ. P. 54.02. *See* Minn. R. Civ. P. 54.02 (providing that when multiple parties are involved in an action, the district court may direct entry of a final judgment as to one or more but fewer than all parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment). The district court did not make the express determination required to enter a final judgment pursuant to Rule 54.02.

Stat. § 336.9–609(a) (2004). In taking possession, the secured party may proceed "without judicial process, if it proceeds without breach of the peace." Minn.Stat. § 336.9–609(b)(2) (2004). The Thompsons do not deny that they were in default on their loans or that their loan agreements authorized the bank to take immediate possession of their vehicles in the event of default; they contend that the self-help repossession of the Tahoe is invalid because the bank did not take possession without breach of the peace.

But it is undisputed that Minske backed his tow truck up to the Tahoe, hooked the Tahoe to the tow truck, and lifted the Tahoe's rear wheels off the ground before he had any contact with Thompson. In *James v. Ford Motor Credit Co.,* a car buyer who had financed the purchase of a car fell behind on monthly loan payments, and an agent of the creditor repossessed the car by removing it from a public parking lot. 842 F.Supp. 1202, 1204–05 (D.Minn.1994), *aff'd on other grounds,* 47 F.3d 961 (8th Cir.1995). About an hour later, the car buyer saw the creditor's agent driving the car several miles away from the parking lot. *Id.* at 1205. The car buyer entered the car, an altercation ensued, and the car buyer gained control of the car and drove it home. *Id.* In determining whether the repossession violated the self-help repossession statute, the court applied the rule that "[o]nce a repossession agent has gained sufficient dominion over collateral to control it, the repossession has been completed," *Id.* at 1209 (citing *Wallace v. Chrysler Credit Corp.,* 743 F.Supp. 1228, 1233 (W.D.Va.1990)), and found that once the creditor's agent had control of the car, the repossession was complete, and the car buyer's violence could not dispossess the creditor of its right to possession. *Id.* We agree with the *James* court that once a creditor has gained control of collateral, repossession is

complete, and a debtor cannot regain legitimate control of the collateral by resisting or objecting to the creditor. Following a different rule would encourage confrontations between debtors and creditors, which would be contrary to the statutory goal of preventing breaches of the peace.

Here, Minske had attached the Tahoe to his tow truck and lifted the Tahoe's rear wheels from the ground before he had any contact with Thompson. When he lifted the wheels from the ground, Minske gained sufficient dominion over the Tahoe to control it. Therefore, the repossession was complete when the wheels were lifted from the ground, and any objections to the repossession that Thompson made to Minske after that point could not dispossess the bank of its right to possession.

The Thompsons contend that even if a breach of the peace that would dispossess the bank of its right to possession could not occur after the repossession was complete, a trespass that occurs during the repossession process constitutes a breach of the peace, and when Minske entered their property, he was trespassing. Therefore, they argue, the repossession was not completed without a breach of the peace. We disagree.

This court has determined "that no violence or threat of violence need occur before a breach of the peace may be found." *Bloomquist v. First Nat'l Bank of Elk River,* 378 N.W.2d 81, 86 (Minn.App.1985), *review denied* (Minn. Jan. 31, 1986). But this does not mean that any entry onto the debtor's property is a breach of the peace. In *Bloomquist,* the creditor's agents repossessed the debtor's business tools and equipment by removing a cracked window pane to enter the debtor's business on a Saturday, when the business was closed. *Id.* at 83. This court held that the creditor's breaking and entering the debtor's

business to repossess collateral constituted a breach of the peace, as a matter of law. *Id.* at 86. The circumstances of the repossession in *Bloomquist,* however, differ significantly from the repossession of the Thompsons' Tahoe. Minske did not enter a closed building, or even open a closed gate, to reach the Tahoe; he simply drove his tow truck where any visitor could drive a car.

Commentators have explained that "[i]n general, the creditor may not enter the debtor's home or garage without permission," and the great majority of the cases agree "that entry into the debtor's residence in the absence of the debtor is a breach of the peace." 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 34–8, at 386 (5th ed.2002). But those commentators have also recognized that

> [a]s one moves away from the residence itself to the yard, the driveway, and finally the public street, the debtor's argument [that there has been a breach of the peace] becomes progressively more tenuous. We have found no case which holds that the repossession of an automobile from a driveway or a public street (absent other circumstances, such as the debtor's objection) itself constitutes a breach of the peace, and many cases explicitly uphold such repossessions.

*Id.*

We agree that it is a tenuous argument that there has been a breach of the peace simply because a creditor enters a debtor's yard or driveway to take possession of collateral. Under Minn.Stat. § 336.9–609(b)(2), a secured party has authority to take possession of collateral after default, if the secured party proceeds without breach of the peace.

> A duty or authority imposed or created by legislative enactment carries with it the privilege to enter land in the possession of another for the purpose of performing or exercising such duty or authority in so far as the entry is reasonably necessary to such performance or exercise, if, but only if, all the requirements of the enactment are fulfilled.

Restatement (Second) of Torts § 211 (1965).

When this restatement principle is applied to Minn.Stat. § 336.9–609(b)(2), a secured party's authority to take possession of collateral after default carries with it the privilege to enter another's land for the purpose of taking possession of the collateral if the entry is reasonably necessary in order to take possession. And if the secured party has a privilege to enter another's land to take possession of collateral after default, the entry is not a trespass because "a trespasser is 'one who enters or remains on the [premises] without the express or implied consent of the possessor of land.'" *Reider v. City of Spring Lake Park,* 480 N.W.2d 662, 666 (Minn.App.1992) (quoting *Rieger v. Zackoski,* 321 N.W.2d 16, 20 (Minn.1982)), *review denied* (Minn. April 13, 1992).

Applying these principles to the present case, we conclude that because Minske's entry onto the Thompsons' land was reasonably necessary to take possession of the Tahoe after the Thompsons defaulted on the loans secured by the Tahoe, Minske had a privilege to enter the Thompsons' land, and, therefore, the entry was not a trespass. Because the entry was not a trespass, and there is no evidence that Minske had any contact with the Thompsons before the Tahoe's rear wheels were lifted from the ground, Minske completed the repossession without a breach of the peace.

### 3. Attorney/Client Privilege

 Citing the district · court's · order granting summary judgment, the Thompsons contend that the district court granted respondents summary judgment "because [the district court] had found that once the attorney client privilege is waived and an attorney testifies on behalf of the client, the client is not allowed to again seize the shield of his privilege and shut out all testimony to communications between his attorney and himself." The Thompsons then argue that because Stuart Minske was present during Brian Thompson's telephone conversation with his attorney, Thompson's conversation was not a privileged attorney/client communication, and admitting evidence about the telephone conversation did not waive the attorney/client privilege. The Thompsons then conclude that "any other communications Brian Thompson made to his attorney privately and outside the presence of Stuart Minske remain[ ] confidential between the attorney and the client." But the Thompsons do not identify any privileged communications between Brian Thompson and his attorney that have not remained confidential or explain how any violation of the attorney/client privilege affected the district court's decision.

The only communication between Brian Thompson and his attorney that the district court refers to in its summary-judgment order is the telephone conversation that occurred while Minske was in the Thompsons' house. Because the Thompsons contend that this conversation was not privileged, and they have not identified other communications that have not remained confidential, it is not apparent what error they claim the district court made with respect to privileged communications. Therefore, we deem the privileged-communications issue waived, and we will not address it. *See In re Irwin,* 529 N.W.2d 366, 373 (Minn.App.1995) (issue not adequately argued or briefed on appeal deemed waived), *review denied* (Minn. May 16, 1995); *Midway Ctr. Assocs. v. Midway Ctr., Inc.,* 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975) (to prevail on appeal a party must show error and that error caused prejudice).

## DECISION

Because it was reasonably necessary for Minske to enter the Thompsons' property in order to take possession of the Tahoe after the Thompsons defaulted on the loans secured by the Tahoe and Minske gained sufficient dominion over the Tahoe to control it before he had any contact with Thompson, Minske completed repossession of the Tahoe without a breach of the peace.

**Affirmed.**